**Jerry W. BIGGS, Appellant,**

v.

**GSC ENTERPRISES, INC. a/k/a Grocery Supply Company, Jimmy Boswell, individually, Appellees.**

No. 2–99–110–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 16, 1999.

Michael L. Skinner, Grand Prairie, for appellant.

E.L. Caraway, III, Fort Worth, for appellee.

Panel A: DAUPHINOT, BRIGHAM, and HOLMAN, JJ.

## OPINION

WILLIAM BRIGHAM, Justice.

### Introduction

In this personal injury case, Jerry Biggs appeals from a jury verdict that awarded him damages for past medical expenses

and lost earning capacity but nothing for physical pain, mental anguish, or physical impairment. We affirm.

On July 27, 1994, Biggs and Jimmy Boswell were involved in an automobile accident. Biggs later sued Boswell and his employer, GSC Enterprises, Inc., a/k/a Grocery Supply Company for personal injuries arising out of the accident. The jury found Biggs and Boswell each 50 percent liable for the accident and awarded Biggs $15,000 in damages for past medical expenses and $15,000 for past lost earning capacity. The jury did not award Biggs any damages for future medical expenses or lost earning capacity, or for physical pain, mental anguish, or physical impairment.

## Zero Damages for Pain and Impairment

■ In his first point, Biggs complains the jury's award of $30,000 in damages for past medical expenses and lost earning capacity is fatally inconsistent with its failure to award him any damages for physical pain and mental anguish or physical impairment.

■ In reviewing a jury's findings for conflict, the threshold question is whether the findings are about the same material fact. See Bender v. Southern Pac. Transp. Co., 600 S.W.2d 257, 260 (Tex. 1980); Love v. State, 972 S.W.2d 114, 117 (Tex.App.—Austin 1998, pet. denied). An appellate court has a duty to reconcile apparent conflict in the jury's findings whenever reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole. See Bender, 600 S.W.2d at 260; Love, 972 S.W.2d at 117. The party seeking to set aside an alleged conflicting finding bears the burden of showing that one of the conflicting jury answers necessarily requires a judgment different from the judgment the trial court ren-

dered. See Lee v. Huntsville Livestock Servs., Inc., 934 S.W.2d 158, 160 (Tex. App.—Houston [14th Dist.] 1996, no writ).

### Physical Pain

Biggs contends the jury's findings on medical expenses, loss of earning capacity, and physical pain and mental anguish all relate to the same material fact: whether he suffered physical pain as a result of the accident. Biggs contends he would not have sought medical treatment or lost work time if he had not been in pain; therefore, the jury's finding of no physical pain cannot be reconciled with the two damages awards.[1]

While the record shows that Biggs was in pain after the accident, there is conflicting evidence about what caused the pain. At the scene of the accident, Biggs told the investigating officer he was not hurt and did not need medical attention. The day after the accident, however, Biggs went to his doctor, complaining of low back pain. Biggs attributed his pain to both the accident and a work-related injury that occurred three years earlier in his job as a shipping clerk. Biggs's doctor diagnosed him as suffering from a lumbosacral strain—the same diagnosis given by a different doctor when Biggs sustained a work-related injury in 1979.[2] After about six weeks of treatment with the narcotic pain killer Lortab, muscle relaxers, and physical therapy, Biggs reported to his doctor that his back was pain free and obtained a full work release.

Meanwhile, Biggs's medical records show that he suffered from a chronic low back condition for about 15 years before the accident. He injured his back at work in 1979, and from 1982 on, he had lower back pain after nearly any physical activity. In 1991, Biggs suffered another on-the-job injury to his lower back, for which he sought regular medical treatment through the date of the accident. Between

---

1. Biggs does not brief mental anguish, so we will not address that element of damages.

2. Apparently, Biggs did not mention the 1979 work-related injury to any of his doctors.

1991 and 1993, he saw a chiropractor 37 times for his low back condition. From March 1992 to May 1994, he had his Lortab prescription refilled almost monthly. During that time, he reported to his physician that his back pain was easily aggravated by his work-related activities, such as bending, squatting, lifting, and standing.

Biggs injured his back again on May 22, 1994, just two months before the accident. In addition to Lortab, Biggs took muscle relaxers, Tylenol, and Advil for his back. Twelve days before the accident, Biggs reported experiencing a sharp pain in his low back area when he turned. The day before the accident, Biggs requested another refill of his Lortab medication.

After the accident, Biggs returned to full work activity in mid-September 1994 with his doctor's approval. By late October, he again sought medical treatment because of low back pain. However, on November 16 and 18, 1994, Biggs told the plant doctor at his job that his back pain was caused by the 1991 work-related injury and insisted that the accident had not exacerbated his back problems. Ten days later, Biggs went to Frederick Todd, M.D., a neurosurgeon, to be evaluated for possible back surgery. Biggs told Dr. Todd he had experienced and been treated for low back pain for three years. Biggs attributed his back pain to the physical requirements of his job and to the July 27 accident. Biggs reported being relatively pain-free when he was off work on the weekends.

In February 1995, Biggs went to James A. Scott, M.D. for an independent medical examination to obtain an impairment rating. Biggs told Dr. Scott he had a three-and-a-half-year history of low back pain related to a June 19, 1991 injury and was taking four to eight Lortab per day for the pain.[3] He did not mention the automobile accident. Dr. Scott concluded that Biggs had a 5 percent impairment to his whole

body as a result of a structural abnormality of the lumbar spine, with no mention of the abnormality being related to the automobile accident.

In March 1995, Biggs underwent low back surgery for a herniated lumbar disc. Dr. Steve Watts, one of Biggs's doctors and the only medical expert to testify at trial, believed the surgery was necessitated by the July 1994 automobile accident. However, Dr. Watts did not know whether the herniated disc preexisted the accident or occurred afterwards. Moreover, a CT scan performed three weeks after the accident did not show a herniated disc, and in September 1994, Biggs's physician found Biggs was pain free, 100 percent able with normal results on reflex, strength, bending, and sensation tests, and able to return to full-duty work.

### Impairment

Biggs put on some evidence that his post-accident low back pain impaired his ability to work, sleep, and engage in the recreational activities he had once enjoyed. For instance, James Paden, Biggs's supervisor, testified that Biggs had a marked decrease in his ability to work after the auto accident. Paden testified that Biggs had not needed light duty restrictions before the accident. However, Biggs's employment records show he was put on light duty for low back problems in July 1992.

Biggs's son, James, testified that Biggs regularly slept in a recliner after the accident because he was unable to rest comfortably in bed due to his back pain. But Biggs told Dr. Scott that his inability to sleep was due to his 1991 work-related injury.

James further testified that he and Biggs had gone fishing one or two times a week before the accident, but that Biggs only went one or two times per year after the accident. Larry Blackmon, one of

---

**3.** Biggs's medical records show his primary care physician would not give him more than 30 Lortab per month.

Biggs's softball teammates, testified that Biggs had been a good player for several years before the accident but was unable to continue playing softball afterwards. However, Biggs admitted that, after the accident, he had taken several trips to Las Vegas and Louisiana to gamble, gone fishing numerous times, taken a fishing trip to the Texas coast, participated in a fishing tournament, and crawled under his house. Biggs also indicated in a September 1995 statement to his physician that his recreational activities included softball and bicycling.

■ Based on all of this evidence, the jury could have concluded that Biggs's pain and impairment were caused primarily by the 1991 injury or his long-term back problems. The jury could also have concluded that any pain or impairment resulting from the accident was too minimal to warrant a monetary award, but that Biggs should be fairly compensated for seeking medical care and missing some work to ensure that the aggravation to his chronic low back condition was not serious. The mere fact of injury does not prove compensable pain and suffering or impairment. *See Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex.App.—Dallas 1988, no writ). A jury may award "zero damages" when the injuries sustained are subjective in nature or there is both subjective and objective evidence of damages. *See Lamb v. Franklin*, 976 S.W.2d 339, 341 (Tex.App.—Amarillo 1998, no pet.); *see also McGuffin v. Terrell*, 732 S.W.2d 425, 427–28 (Tex.App.—Fort Worth 1987, no writ) (holding that jury may award no damages for pain and suffering despite finding other damages resulting from injury, if damages found are minimal and complaint of injury is subjective). The evidence concerning whether Biggs suffered additional back pain as a result of the accident is almost entirely subjective—based on his own personal reports of pain to his doctors, supervisor, and family members.

Biggs has not met his burden of showing that the jury's answers necessarily require a judgment different from the one the trial court rendered. *See Lee*, 934 S.W.2d at 160. Accordingly, we overrule point one.

### Sufficiency of Evidence

■ In his second point, Biggs asserts the jury's failure to award him any compensation for physical pain or impairment is against the great weight and preponderance of the evidence. We will not reverse a jury finding unless, based on the evidence as a whole, it is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *See Ames v. Ames*, 776 S.W.2d 154, 158–59 (Tex.1989), *cert. denied*, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Appellate courts are reluctant to overturn jury findings of no damages for pain and suffering when the indicia of injury and damages are more subjective than objective. *See Crow v. Burnett*, 951 S.W.2d 894, 897–98 (Tex.App.—Waco 1997, pet. denied); *Blizzard*, 756 S.W.2d at 805.

■ We hold the jury's finding of no physical pain or impairment in this case is not against the great weight and preponderance of the evidence. As the trier of fact, the jury was the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 549 (1962); *Pilkington v. Kornell*, 822 S.W.2d 223, 230 (Tex.App.—Dallas 1991, writ denied). The medical evidence about the cause of Biggs's herniated disc injury was inconclusive, and his sole medical expert did not know for certain when the injury occurred. The evidence regarding Biggs's back pain and impairment after the accident—primarily based on his own self-reporting—was conflicting, and it was within the province of the jury to resolve that conflict. *See McGalliard v. Kuhlmann*,

722 S.W.2d 694, 697 (Tex.1986); *Pilkington,* 822 S.W.2d at 230. We overrule point two.

## Conclusion

Having overruled Biggs's points, we affirm the trial court's judgment.