MEMORANDUM OPINION



No. 04-06-00237-CV



Braulio LARA,


Appellant



v.



WEEKS MARINE, INC.,


Appellee



From the 381st Judicial District Court, Starr County, Texas


Trial Court No. DC-04-77


Honorable John A. Pope, III, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Karen Angelini, Justice

 Sandee Bryan Marion, Justice

 Rebecca Simmons, Justice


Delivered and Filed: May 30, 2007


REVERSED AND REMANDED


 Braulio Lara appeals a judgment rendered in his favor based on claims under the Jones Act
and for maintenance and cure. In his second issue, Lara asserts that the jury's failure to award
damages for past physical pain and suffering was against the great weight and preponderance of the
evidence. We agree with Lara and sustain his second issue. Because Lara's second issue is
dispositive, we do not address his other issues. See Tex. R. App. P. 47.1 (opinion should address
every issue raised and necessary to final disposition of appeal).

Background


 Lara worked as a deckhand on a vessel owned by Weeks Marine called the CAPTAIN JOHN. 
For some weeks before February 4, 2004, the CAPTAIN JOHN had a hole in its hull allowing the
ballast tanks to take on water in rough seas. As a stopgap pending repair, Lara and another
deckhand, Juan Pruneda, would pump water out of the ballast tanks every few days. 

 After midnight on February 4, 2004, the boat captain, Francis Olivier, ordered Pruneda to
check the engine and further ordered Lara and Pruneda to pump the water. Pruneda opened the hatch
in the storage room and went to check the engine. Pruneda did not close the hatch behind him. Lara
went into the storage room - that was without light according to Pruneda and Lara - to retrieve the
pump. (1) Lara fell through the hatch that Pruneda left open, injuring himself.

 Lara sued Weeks Marine. A jury found Lara and Weeks Marine equally negligent but further
found the CAPTAIN JOHN was not unseaworthy. The jury awarded Lara $230,000.00 in
compensatory damages, consisting of: (1) $70,000.00 for income loss in the past; (2) $10,000.00 for
impairment of earning capacity or ability in the future, including impairment in the normal progress
in Braulio Lara's earning capacity due to his physical condition; (3) $100,000.00 for medical
expenses in the past; and (4) $50,000.00 for medical expenses in the future. (2) The jury further found
that Lara would not reach maximum medical improvement until January 1, 2006, and that Weeks
Marine owed Lara $13,000.00 in maintenance and $26,000.00 in cure. The trial court rendered
judgment in Lara's favor for the maintenance and cure and denied Lara's motion for new trial and
motion to modify, correct or reform the judgment. (3)

Standard of Review


 Because Lara attacks the factual sufficiency of the evidence to support an adverse finding on
an issue on which he had the burden of proof, he must demonstrate that the adverse finding is against
the great weight and preponderance of the evidence. Dow Chemical Co. v. Francis, 46 S.W.3d 237,
242 (Tex. 2001). In reviewing the factual sufficiency of the evidence to support a finding, we
consider and weigh all of the evidence and set aside the finding only if it is so against the great
weight and preponderance of the evidence as to be manifestly unjust. Golden Eagle Archery, Inc.
v. Jackson, 116 S.W.3d 757, 761-62 (Tex. 2003). The jury is the sole judge of the credibility of the
witnesses and the weight of the evidence, and this court must not merely substitute its judgment for
that of the jury's. Id. at 761. In reviewing a jury's failure to award any damages, we must detail the
evidence relevant to the issue in consideration and clearly state why the jury's finding is factually
insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it
shocks the conscience; or clearly demonstrates bias. Id. at 775; Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986).

 When only one category of damages is challenged on the basis that the award in that category
was zero or too low, a court should consider only whether the evidence unique to that category is so
against the great weight and preponderance of the evidence as to be manifestly unjust, shock the
conscience, or clearly demonstrate bias. Golden Eagle Archery, Inc., 116 S.W.3d at 775. In some
instances, the injuries are so substantial and the symptoms so objective that an award of damages for
pain and suffering is clearly supported, and the failure to award such damages while simultaneously
awarding medical expenses would be clearly erroneous. See, e.g. Horton v. Denny's, Inc., 128
S.W.3d 256, 260 (Tex. App.--Tyler 2003, pet. denied); McMullen v. Jobes, No. 04-02-00789-CV,
2003 WL 22011301, at *2 (Tex. App.--San Antonio Aug. 27, 2003, no pet.); Dollison v. Hayes, 79
S.W.3d 246, 249-50 (Tex. App.--Texarkana 2002, no pet.); Monroe v. Grider, 884 S.W.2d 811, 820
(Tex. App.--Dallas 1994, writ denied). When the fact of the injury and resulting damages chiefly
depend upon subjective evidence, however, appellate courts are reluctant to hold the non-findings
as against the great weight and preponderance of the evidence. See, e.g. Horton, 128 S.W.3d at 260;
McMullen, 2003 WL 22011301, at *2; Dollison, 79 S.W.3d at 250; Monroe, 884 S.W.2d at 820.

Evidence Relevant to Past Physical Pain and Suffering


 Tom Langan, the corporate risk manager for Weeks Marine, testified that Weeks Marine paid
Lara maintenance and cure for his left shoulder injury but not for his neck or back injury. Langan
stated that he was not convinced that Lara sustained a neck or back injury in connection with the
accident he reported. Langan agreed that there is "no dispute" that Lara sustained a fracture of the
greater tuberosity of his left shoulder in his fall. 

 Teresa Olivo, the corporate claims manager for Weeks Marine, testified that she authorized
the referral to Dr. Fitter, who is an orthopedist. Dr. Fitter reported that Lara looked a bit
uncomfortable, was not in severe distress, but had quite a bit of pain with any attempt at movement
of the left shoulder. Dr. Fitter prescribed Vicodin for pain and concluded that Lara would require
further orthopedic follow-up. Two days after his injury, Lara went home and did not report for his
next hitch until February 13, 2004. (4) When Lara returned to Dr. Fitter on February 13, 2004, Lara
reported that he had developed low back and left-sided neck pain. Dr. Fitter refilled Lara's Vicodin
for pain relief after work hours. Dr. Fitter reported that Lara's barge would be moving back to
Texas, so he would be unable to follow-up, but Lara would need orthopedic follow-up within seven
to 14 days to consider referral to physical therapy.

 Lara was next seen by Dr. Donovan on February 16, 2004. At that time, Lara had pain and
stiffness to the left shoulder, pain in his neck radiating down into his left hand, and pain to his low
back radiating into his left hip. During his examination of Lara, Dr. Donovan determined that Lara
had limited motion and could only lift his left shoulder 40 degrees as opposed to a normal lifting of
140 to 160 degrees. Dr. Donovan diagnosed Lara as having a ruptured disc in his neck at the C5-C6
level, a fracture to his left shoulder, and a ruptured disk in his back at the L5-S1 level. The MRI
report of the cervical spine stated that Lara had a central disc herniation at the C5-C6 level. The
MRI report of the lumber spine stated that Lara had a central disc herniation at the L5-S1 level. Dr.
Donovan stated that the injuries were all caused by Lara's accident. Dr. Donovan believed that the
reason Lara did not initially report the neck and back pain to Dr. Fitter was because he had sustained
the shoulder fracture which was a very, very painful fracture and overshadowed his other pain. Dr.
Donovan initially ordered conservative therapy. 

 When Dr. Donovan next saw Lara on March 1, 2004, he referred him for physical therapy. 
On April 12, 2004, Dr. Donovan reported that Lara had slight atrophy to the left arm attributable to
his not using the arm normally because of the shoulder fracture. Dr. Donovan sent Lara for a nerve
test which confirmed injuries to the neck and lumbar spine. Dr. Donovan sent Lara for a cortisone
shot in both areas, but the shots did not relieve the pain. In May of 2004, Lara was still experiencing
pain, and Dr. Donovan recommended continued physical therapy. In June of 2004, Lara was still
experiencing pain, and Dr. Donovan requested additional testing to confirm whether Lara was a
surgical candidate for his neck. In September of 2004, Lara had a cervical discogram which
confirmed the ruptured disc in his neck. In February of 2005, Lara had a lumbar discogram which
did not show a herniated disc. Following this testing, Dr. Donovan recommended surgery for Lara's
neck and scope surgery to his left shoulder. Dr. Donovan did not recommend surgery for the lumbar
spine. Dr. Donovan explained the purpose of the scope surgery would be to cut out the scar tissue
that developed as a result of the fracture.

 Dr. Guillermo Pechero, an orthopedic surgeon, first saw Lara on March 1, 2005. Lara
complained of injuries to his neck, low back and left shoulder. Dr. Pechero testified that Lara had
a disc herniation at the C5-C6 level and the L5-S1 level, and Dr. Pechero recommended a surgical
fusion of C5-C6. Lara had the surgery on March 14, 2005. By April 20, 2005, Lara was still having
occasional pain to his neck, but the pain down his arm was resolving. His left shoulder was
continuing to bother him. In May of 2005, Dr. Pechero recommended surgery for his shoulder
because the pain was increasing. Dr. Pechero was continuing to monitor Lara's lumbar spine but
was not recommending immediate surgery.

 Pruneda, the co-worker with Lara on the night of the accident, testified that Lara called him
when he fell in the hole. Lara told him he had pain on his left side. Pruneda stated that they went
about the job with Lara helping as much as he could, but Pruneda did most of the "heavy stuff." 

 Olivier, the captain, stated that Lara reported his injury to him. Olivier asked Lara if he
wanted to call a boat to pick him up or if he would ride back to the dredge with him. Lara said he
would wait until they returned to the dredge.

 Lara was working his twelve hour shift which began at 5:00 or 5:30 p.m. Around midnight
or 1:00 a.m., Lara testified that he fell through the hatch but did not fall into the engine room because
he "got hanged up - hanged up by my shoulder." Lara reported the injury to Olivier but kept
working as much as the pain would permit him to work. Lara stated that he helped untie a few ropes
but could not help anymore because he had a lot of pain. On a scale of one to ten, Lara described
his pain as a nine that worsened as he continued to work. When Lara returned to the dredge, he
reported his injury to the captain of the dredge. The captain told him that he had to fill out an
accident report before he could go to the doctor. Lara told him that he had to take a shower so he
could go to the doctor, and when he came back the timekeeper told him he could not go to the doctor
until he completed the report. Lara completed the report in a hurry because the crew boat, which
carries the workers from the dredge to the land around 5:30 each morning, was leaving. Lara was
more concerned about catching the crew boat because of his pain than in what was written in the
report. Lara described his pain as a nine or ten. Lara said the doctor took an MRI of his shoulder
and gave him some pills. Lara stated that he began having pain in his back and neck after he
returned home the day after his accident. Lara testified that he was taking the pain medication for
his shoulder but was unable to sleep much because of the pain. When Lara returned to begin his next
hitch, he returned to the doctor and reported his neck and back pain. Lara was released for light duty
which included painting the dredge, taking out trash, and washing dishes. Lara stated that he was
unable to wash dishes with one hand. Lara stated that he was wearing a sling and could not move
his arm because of the pain. A few days later, Lara told the captain that he still had a lot of pain and
could not work on the dredge with one hand. The captain told Lara that he would not be paid if he
left, and Lara said that he did not care because of the pain. After leaving, Lara went to Dr. Donovan
for a year, and then went to Dr. Pechero for a second opinion after Dr. Donovan recommended
surgery. During the time Dr. Donovan was treating him, Lara still had a lot of pain. He continued
to take pain medication. After his neck surgery, Lara said his neck was much better. Lara stated that
he intended to have the surgery for his shoulder because it still hurt and he was unable to move it
normally.

 Dr. Roger Berg, a radiologist, was retained by Weeks Marine to review Lara's MRIs and x-rays. The shoulder x-ray and MRI taken February 4, 2004 showed a fracture of the greater tuberosity
but no rotator cuff tear. Dr. Berg attributed the fracture to Lara's falling into the open hatch. Dr.
Berg testified that neither the cervical and lumbar x-rays nor the discograms showed any herniations
in either the cervical spine or the lumbar spine. Dr. Berg stated that the January 20, 2005 x-ray of
the left shoulder showed that the fracture had nearly completely healed and that there was no soft
tissue calcifications or deformity of the greater tuberosity as a result of the fracture. Dr. Berg
testified that if Lara had sustained an injury to the disc in his neck as a result of his fall, he would
have had immediate pain. Dr. Berg could not testify whether Lara needed arthroscopic surgery on
his shoulder because he could not determine if Lara had a clinical impingement based on the
available medical records.

 Dr. Gary Freeman was retained by Weeks Marine to provide an independent medical
evaluation of Lara. Dr. Freeman stated that Lara's initial x-ray and MRI revealed a shoulder fracture. 
Dr. Freeman stated he would have treated the fracture as follows, "as soon as the pain subsides,
which is usually a matter of a few days, certainly by seven days, then I start them on physical
therapy, range of motion and activity; and by and large, most people are well in six to 12 weeks." 
Dr. Freeman stated that the medical records did not show any injury to Lara's low back or neck.

 Dr. Mark McDonnell testified that Lara's lumbar discogram was normal. Dr. McDonnell
also testified that Lara's cervical x-ray showed a herniation but no compression on the nerve.

Analysis


 Each of the cases discussed at any length by Weeks Marine in its brief are distinguishable
from the facts in this case. First, in Pilkington v. Kornell, 822 S.W.2d 223, 229-230 (Tex.
App.--Dallas 1991, writ denied), "the only objective injury that doctors could find for more than two
years were muscle spasms," and the plaintiff's MRI was normal. Even the Texas Supreme Court
cautioned about overly broad reliance on Pilkington, stating, "This does not mean, however, that a
verdict awarding no damages for pain and suffering should be upheld on appeal if there is objective,
undisputed evidence of a significant injury and the jury could not have compensated the injured party
in some other category of damages." Golden Eagle Archery, Inc., 116 S.W.3d at 775. In this case,
there is objective, undisputed evidence that Lara sustained at the very least a shoulder fracture as 
a result of the accident, and the jury awarded Lara $100,000.00 in past medical expenses and
$50,000.00 in future medical expenses. The only other categories of damages for which the jury
compensated Lara were loss of past income and impairment of future earning capacity. Neither of
these categories could have compensated Lara for his past physical pain and suffering.

 The second case examined in Weeks Marine's brief is Biggs v. GSC Enterprises, Inc., 8
S.W.3d 765 (Tex. App.--Fort Worth 1999, no pet.). In Biggs, unlike in the instant case, Biggs told
the investigating officer at the scene of the accident, which occurred in July of 1994, that he was not
hurt. 8 S.W.3d at 767. A CT scan performed three weeks after the accident did not show a herniated
disc. Id. at 768. The court concluded:

 The medical evidence about the cause of Bigg's herniated disc injury was
inconclusive, and his sole medical expert did not know for certain when the injury
occurred. The evidence regarding Bigg's back pain and impairment after the accident
- primarily based on his own self-reporting - was conflicting, and it was within the
province of the jury to resolve that conflict.


Id. at 769. In Lara's case, the medical evidence conclusively establishes that Lara suffered a
shoulder fracture that is undisputedly linked to his fall. No conflicting evidence was presented
regarding Lara's pain. In fact, both Dr. Donovan and Dr. Freeman testified regarding the pain that
accompanies such a fracture.

 Weeks Marine also refers to Dollison v. Hayes, 79 S.W.3d 246 (Tex. App.--Texarkana 2002,
no pet.). Dollison is also distinguishable because Dollison's x-rays did not reveal an accident-related
injury unlike Lara's x-rays and MRI which confirmed that he sustained a shoulder fracture. 79
S.W.3d at 251. Noting that the jury had to rely on Dollison's subjective testimony, the court
reasoned:

 We recognize that muscle cramps and spasms can be potentially painful. We also
recognize, however, that severe compensable pain does not automatically accompany
a muscle cramp or spasm in the same way that such pain accompanies a concussion
or broken bone.


Id. at 252 (emphasis added). Unlike a soft tissue injury which may not be objectively verified, Lara
undisputedly sustained a fractured shoulder as a result of his fall.

 Finally, Weeks Marine discusses Huber v. Ryan, 627 S.W.2d 145 (Tex. 1981). Huber is
readily distinguishable on the ground that the record in Huber did not even contain a statement of
facts. 627 S.W.2d at 145. The court was seeking to reconcile the jury's affirmative findings of
injury and loss of earning capacity in the past with its failure to award damages for pain and mental
anguish in the past. Id. at 145. The court reconciled the findings based on the instructions given to
the jury. Id. at 146. Thus, Huber did not even involve a factual sufficiency analysis.

 The facts in the instant case are most similar to the facts in Monroe v. Grider, 884 S.W.2d
811, 819-20 (Tex. App.--Dallas 1994, writ denied). Monroe suffered an injury to her right wrist and
groin when she collided with a golf cart. 884 S.W.2d at 819. The medical records showed Monroe
had fractured her wrist and sprained her groin. Id. Monroe testified that the injuries caused her
considerable pain and suffering. Id. The medical records showed Monroe's treatment, including
pain medication and rehabilitation, and she testified that the injuries prevented her from working and
fully enjoying recreational activities. Id. The court concluded:

 A jury may deny an award of damages when the injuries sustained are subjective in
nature. However, Monroe provided medical records documenting her injuries.


Id. at 820. In summarizing the decision in Monroe, the Texas Supreme Court commented, "the jury
could not ignore uncontroverted evidence of injury in denying any recovery for past physical pain." 
Golden Eagle Archery, Inc., 116 S.W.3d at 774.

 The undisputed objective evidence in this case, including MRIs and radiology reports,
established that Lara at the very least suffered a fracture to the greater tuberosity - a shoulder
fracture. Dr. Fitter prescribed and subsequently refilled Lara's prescription for Vicodin, a pain killer. 
Dr. Donovan described the type of fracture as a "very, very painful fracture." Dr. Donovan further
stated that the reason Lara may not also have complained of neck and back pain at the time of his
initial treatment is because the shoulder pain overshadowed the other pain. Even the expert for
Weeks Marine, Dr. Freeman, stated that the typical treatment for the type of fracture sustained by
Lara was to start physical therapy "as soon as the pain subsides, which is usually a matter of a few
days, certainly by seven days." The medical records and Lara's testimony also reflect his subjective
reporting of pain. Having reviewed the evidence, we conclude that the jury's failure to award
damages for past physical pain and suffering is so against the great weight and preponderance of the
evidence as to be manifestly unjust.

Conclusion


 The judgment of the trial court is reversed, and the cause is remanded for a new trial.


 Karen Angelini, Justice



1. The light in the storage room was controlled by a master switch in the wheelhouse.
2. The jury awarded zero dollars in damages for: (1) past physical pain and suffering including physical
disability, impairment, and inconvenience, and the effect of Braulio Lara's injuries and inconvenience on the normal
pursuits and pleasures of life; (2) future physical pain and suffering including physical disability, impairment, and
inconvenience, and the effect of Braulio Lara's injuries and inconvenience on the normal pursuits and pleasures of
life; (3) past mental anguish and feelings of economic insecurity caused by disability; and (4) future mental anguish
and feelings of economic insecurity caused by disability.
3. Because Lara's second issue is dispositive, we do not address whether the trial court erred with respect to
Lara's right to make an election of remedies.
4. A hitch is a period of 14 days. Langan testified that Lara worked 14 days on and had seven days off.