

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00656-CV

Richard **PARKER**,
Appellant/Cross-Appellee

v.

**RAD TRUCKING, LTD.**, and Raul Romero Vasquez,
Appellees/Cross-Appellants

From the 365th Judicial District Court, Maverick County, Texas
Trial Court No. 16-01-32519-MCVAJA
Honorable Amado J. Abascal III, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
    Liza A. Rodriguez, Justice
    Lori I. Valenzuela, Justice

Delivered and Filed: February 14, 2024

AFFIRMED

Appellant Richard Parker was injured in a vehicle accident caused by RAD Trucking's driver. The jury awarded Parker his past medical expenses, but it awarded no damages for his past physical pain and mental anguish or any other claimed damage. The trial court rendered judgment on the verdict, and Parker appeals. He argues the jury's finding of zero damages for past physical pain and mental anguish was against the great weight and preponderance of the evidence. Because the evidence was within the zone of reasonable disagreement, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Parker sued RAD Trucking, LTD. and its driver, Raul Romero Vasquez, for injuries Parker alleges he sustained when the front right corner of the pickup truck he was driving was hit by the back left tire and fender of a tractor-trailer driven by Vasquez.

The accident occurred on October 19, 2015, at about 5:52 p.m. in New Braunfels, Texas. Parker complained that the accident injured his neck and back. Ultimately, Parker's physicians diagnosed him with cervical sprain and a lumbar herniation at the L5-S1 spine level that produced radiation and tingling in his legs.

Before the jury trial began, RAD Trucking stipulated that Vasquez was acting in furtherance of its business and that Vasquez's negligence was the sole proximate cause of the accident. Thus, the only issue left for the jury to decide was whether Vasquez's negligence proximately caused Parker's injuries, and if so, the amount for each element of damage.

At trial, Parker presented evidence, including expert witnesses, that described his injuries. RAD Trucking presented evidence, including expert witnesses, that controverted Parker's claims that his injuries were caused by the October 2015 accident. RAD Trucking argued that Parker's past physical pain and mental anguish were attributable to physical ailments he had before the accident.

After the parties rested, the trial court charged the jury with the following instructions:

> What sum of money, if paid now in cash, would fairly and reasonably compensate RICHARD PARKER for his injuries, if any, that resulted from the occurrence in question?
>
> Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for that same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.
>
> Do not include any amount for any condition that did not result from the occurrence in question. Do not include any amount for any condition existing

before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question.

The jury returned a verdict awarding Parker past medical expenses in the amount of $157,540.24, but it did not award him damages for past or future physical pain and mental anguish, past or future physical impairment, or future medical expenses. Later, the trial court rendered judgment based on the jury's verdict.

Parker appealed. In turn, RAD Trucking and Vasquez filed a conditional cross-notice of appeal. They argue that the trial court erred in excluding evidence challenging the reasonableness of Parker's past medical expenses. We will first address Parker's sole issue.

### WAS THE JURY'S FINDING OF ZERO DAMAGES FOR PAST PHYSICAL PAIN AND MENTAL ANGUISH AGAINST THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE?

#### A. Parties' Arguments

As stated, Parker challenges only the jury's finding of zero damages for past physical pain and mental anguish. Parker argues these points: (a) the jury heard objective evidence that his back surgery and the pain associated with that surgery were caused by the accident; (b) because the jury awarded him 100% of his past medical expenses, the jury necessarily found that the accident caused his physical pain and mental anguish; (c) the jury's necessarily implied causation finding entitled Parker to an award of damages for past physical pain and mental anguish; and (d) given that the jury failed to make such an award, the jury's finding of zero damages for past physical pain and mental anguish was so against the great weight of the preponderance evidence as to be manifestly unjust.

RAD Trucking and Vasquez argue that the evidence of Parker's past physical pain and mental anguish was controverted. Thus, it was the jury's right and duty to weigh the evidence, assess the witnesses' credibility, and resolve any conflicts, which it did.

**B.      Standard of Review**

"When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *accord Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 733 (Tex. 2020).

On appeal, we "must consider and weigh all of the evidence, not just that evidence which supports the verdict." *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *accord Gonzalez v. Wal-Mart Stores, Inc.*, 143 S.W.3d 118, 122 (Tex. App.—San Antonio 2004, no pet.). We "may not pass [judgment] upon the witnesses' credibility or substitute [our] judgment for that of the jury, even if the evidence would clearly support a different result." *Ellis*, 971 S.W.2d at 411.

"If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so." *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005) ("A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement."); *accord Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 223 (Tex. 2019).

**C.      Applicable Law**

*1.      Compensable Physical Pain, Mental Anguish*

"While physical injuries are often accompanied by pain, anguish, and impairment, 'the fact of an injury does not prove compensable pain and suffering or impairment.'" *Gainsco Cnty. Mut. Ins. Co. v. Martinez*, 27 S.W.3d 97, 103 (Tex. App.—San Antonio 2000, pet. granted, judgm't vacated w.r.m.) (quoting *Biggs v. GSC Enters., Inc.*, 8 S.W.3d 765, 769 (Tex. App.—Fort Worth 1999, no pet.)); *accord In re State Farm Mut. Auto. Ins. Co.*, 483 S.W.3d 249, 263 (Tex. App.—Fort Worth 2016, orig. proceeding).

To establish compensable physical pain and mental anguish, the plaintiff must "produce evidence from which the jury may reasonably infer that the damages claimed resulted from the defendant's conduct." *Rumzek v. Lucchesi*, 543 S.W.3d 327, 337 (Tex. App.—El Paso 2017, pet. denied) (citing *Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 839–40 (Tex. 1997)); *accord McKnight v. Hill & Hill Exterminators, Inc.*, 689 S.W.2d 206, 209 (Tex. 1985).

### 2.    Negate Pre-Existing Conditions

"As a part of this burden, when a plaintiff has pre-existing medical conditions that could have caused or contributed to his symptoms, the plaintiff must specifically demonstrate that his medical expenses were 'made necessary by the negligent acts or omissions of the defendant, where such a differentiation is possible.'" *Rumzek*, 543 S.W.3d at 337 (quoting *Murdock*, 946 S.W.2d at 840); *see Martinez*, 27 S.W.3d at 103.

If a plaintiff seeks damages for physical pain and mental anguish, the same rule applies: he must demonstrate that his physical pain and mental anguish are a result of the defendant's negligence. *See Murdock*, 946 S.W.2d at 840; *McKnight*, 689 S.W.2d at 209.

### 3.    Conflicting Evidence

If the evidence that the defendant's negligence caused the plaintiff's injury is objective and uncontroverted, a jury finding of zero damages for physical pain and mental anguish may be reversed. *Rumzek*, 543 S.W.3d at 332–33; *see Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 775 (Tex. 2003) (rejecting the proposition that "a verdict awarding no damages for pain and suffering should be upheld on appeal if there is objective, undisputed evidence of a significant injury and the jury could not have compensated the injured party in some other category of damages").

But if "there is conflicting evidence of the injury's cause or an alternative explanation for the injured party's reported pain, [a jury may return a] zero damage finding[] for physical pain

despite [its] finding that the injured party is entitled to damages for medical expenses." *See In re State Farm*, 483 S.W.3d at 264; *accord Rumzek*, 543 S.W.3d at 333; *Martinez*, 27 S.W.3d at 103 (recognizing that "conflicting evidence [regarding pre-existing injuries] was for the jury to resolve").

### 4. Jury Resolves Conflicting Evidence

Where the parties present conflicting evidence on whether the defendant's negligence caused the plaintiff's injuries, the factfinder must resolve the conflicts, and it "is afforded considerable discretion in evaluating opinion testimony on the issue of damages." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *accord Rumzek*, 543 S.W.3d at 331; *In re State Farm*, 483 S.W.3d at 263 ("Generally, the jury has great discretion in considering evidence on the issue of damages.").

For example, if a plaintiff has a history of pre-existing injuries or chronic pain, but the plaintiff claims his injuries were caused by the defendant's negligence, it is the jury's role to resolve the conflicting evidence on whether the injuries or the physical pain are attributable to sources other than the event made the basis of the suit. *See Rumzek*, 543 S.W.3d at 331; *In re State Farm*, 483 S.W.3d at 263. In doing so, if it finds that the plaintiff's injuries were primarily caused by the plaintiff's pre-existing conditions, the jury may decide to not award damages for physical pain and mental anguish. *See Rumzek*, 543 S.W.3d at 339; *In re State Farm*, 483 S.W.3d at 263 ("Matters of pain and mental anguish are necessarily speculative, and it is particularly within the jury's province to resolve these matters and decide the amounts attributable thereto."); *Martinez*, 27 S.W.3d at 103; *Biggs*, 8 S.W.3d at 769.

The jury may do so even if it awarded damages for past medical expenses because it "could have concluded that 'any pain or impairment resulting from the accident was too minimal to warrant a monetary award, but that [the plaintiff] should be fairly compensated for seeking medical

care and missing some work.'" *Martinez*, 27 S.W.3d at 103 (alteration in original) (quoting *Biggs*, 8 S.W.3d at 769); *accord Grant v. Cruz*, 406 S.W.3d 358, 364 (Tex. App.—Dallas 2013, no pet.) ("[W]hen there is conflicting evidence of the injury's cause or an alternative explanation for the injured party's reported pain, appellate courts have upheld zero damage findings for physical pain despite the jury finding that the injured party is entitled to damages for medical expenses."); *In re State Farm*, 483 S.W.3d at 264.

**D.      Review of the Evidence**

To support an award for past physical pain and mental anguish, Parker had to produce evidence from which the jury could reasonably find that the physical pain and mental anguish he suffered was caused by the October 2015 accident. *See Rumzek*, 543 S.W.3d at 337 (citing *Murdock*, 946 S.W.2d at 839–40); *see also McKnight*, 689 S.W.2d at 209.

Because he had pre-existing medical conditions that could have caused his physical pain and mental anguish, Parker also had to produce evidence from which a jury could reasonably find that his pre-existing medical conditions were *not* the cause of his complained-of symptoms. *See Rumzek*, 543 S.W.3d at 337; *Martinez*, 27 S.W.3d at 103–04.

In accordance with this applicable law, the jury charge contained the following instruction pertaining to damages:

> Do not include any amount for any condition that did not result from the occurrence in question.  Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question.

It was the jury's role to consider the evidence regarding the cause of Parker's physical pain and mental anguish and to resolve any conflicts in that evidence. *See McGalliard*, 722 S.W.2d at 697; *Rumzek*, 543 S.W.3d at 331; *In re State Farm*, 483 S.W.3d at 263.  We turn now to the evidence, beginning with that presented by Parker.

*1.      Parker's Pre-Accident Medical History*

Parker testified that since 1999, he has had a history of psoriatic arthritis, a condition that causes inflammation in his joints.  He described his arthritis symptoms as a burning and aching pain in his toes and pinkies and flareups in his hands and right knee.

In November 2006, Parker sought treatment for his arthritis from a rheumatologist, Dr. Rita Cuevas.  Dr. Cuevas testified that, to treat Parker's arthritis, she prescribed Enbrel, a once-a-week injection.  She also prescribed Tramadol—a pain relief medication—due to the pain Parker felt in multiple joints.  When he did not take the Enbrel, he started having a severe flare of arthritis in his right foot, and he reported his pain level as a ten on a scale of one to ten, with ten being the highest.

In June 2015, Parker told Dr. Cuevas he was having trouble working as a painter because of his arthritis.  At the time, he was taking Tramadol regularly; the pharmacy records showed he filled one prescription for Tramadol in May, two in June, and two in July.

According to Parker, about four months before the October 2015 accident, Dr. Cuevas recommended that he change his diet. He complied, and his arthritis symptoms decreased dramatically within a week.  He stopped taking any pain medication, and he stopped seeing Dr. Cuevas.

*2.      Parker's Account of the Accident*

Parker testified that when the accident occurred, he knew immediately that he had been injured: "I was injured right then; . . . I was jacked up."  About three hours after the accident, he drove to the hospital.  The emergency room physician record includes this note: "[Patient] states he was side swiped by 18 wheeler when trying to get onto highway."  The report shows Parker complained of neck pain, but he did not complain of back pain.  The hospital physician diagnosed Parker as having cervical spine sprain.

*3.     Post-Accident Care*

Parker testified that the pain he felt after the accident was different than the pain he felt from his psoriatic arthritis, and he sought medical care to address his pain.

a.     Dr. Adeniran[1]

About a month after the accident, Parker sought treatment from an orthopedic specialist, Dr. Adewale O. Adeniran. Parker complained of neck and back pain. Dr. Adeniran's diagnosis was cervical and lumbar strain; he recommended chiropractic manipulation and pain management treatments. With the chiropractic manipulation and part of the pain management treatment, Parker's pain to his neck and back temporarily resolved and his prognosis was favorable.

b.     Dr. Gutzman

At trial, Parker called Dr. Dennis R. Gutzman, a board-certified orthopedic surgeon, as one of his expert witnesses. Dr. Gutzman testified about his observations and conclusions in treating Parker.

In February of 2016, Dr. Gutzman first saw Parker. Parker described the accident as his truck being hit on the right side by an eighteen-wheeler. Parker complained of lower back pain with right leg pain and cervical spine pain. However, Parker only sought treatment for his lower back and leg pain.

After examining Parker, reviewing Dr. Adeniran's records, and analyzing Parker's MRIs, Dr. Gutzman determined that Parker sustained disc herniations at three disc levels starting at the L4-L5 level through the L5-S1 level. To manage Parker's back pain, Dr. Gutzman first recommended conservative treatment in the form of epidural steroid injections. When Parker got

---

[1] Dr. Adeniran did not testify; the information was taken from his Clinical Encounter Summaries, which were admitted into evidence.

only temporary pain relief from those injections, Dr. Gutzman recommended a discographic study, which would allow him to determine which discs were injured.

From the study, Dr. Gutzman determined that Parker's disc at the L5-S1 level had a 5 mm tear. According to Dr. Gutzman, the disc tear was the result of the October 2015 accident. He then recommended that Parker consider surgery at the L5-S1 level.

c.      Dr. Bruggeman

At trial, Parker called Dr. Adam John Bruggeman, a board-certified orthopedic surgeon, as another one of his expert witnesses. Dr. Bruggeman, who appeared by video deposition, testified about his observations and conclusions in treating Parker.

Parker was uncertain about Dr. Gutzman's recommendation for surgery, so he sought a second opinion from Dr. Bruggeman. During Parker's first visit, Parker told him he was in a motor vehicle accident; he was hit by an eighteen-wheeler truck, and the pain in his neck and back began after the accident.

After Dr. Bruggeman examined Parker and reviewed his studies and medical records, he recommended that Parker undergo a less-invasive laser procedure at the L4-L5 level to reduce the pain. The laser procedure was successful in that it helped eliminate any radiculopathy in the lower extremities, but the back pain remained.

Dr. Bruggeman opined that Parker's symptoms and injuries were consistent with how Parker described the accident, and they were in reasonable medical probability caused by the October 2015 accident. He noted that although Parker had pre-existing conditions, none necessitated the post-accident surgical procedure that Parker underwent to help reduce his pain.

*4.      Controverting Evidence*

The jury heard the evidence Parker presented, as summarized in part above, and it could have found that it supported Parker's claims that the October 2015 accident caused the pain he experienced after the accident. *See McKnight*, 689 S.W.2d at 209; *Rumzek*, 543 S.W.3d at 331.

But the jury also heard evidence that controverted Parker's claims. *See McGalliard*, 722 S.W.2d at 697; *Rumzek*, 543 S.W.3d at 337; *In re State Farm*, 483 S.W.3d at 263.

a.      Crash Report, Accident Photos

Parker described the accident to Dr. Gutzman and Dr. Bruggeman as his truck being hit on the right side by an eighteen-wheeler. That description could include a violent "T-bone" collision, but a more complete description of the accident was presented in the crash report.

The report was prepared by Officer Michael John Krifka, the investigating officer. His Texas Peace Officer's Crash Report showed the accident occurred in an intersection where both vehicles were turning left together.



As the vehicles proceeded to turn, the back of the tractor-trailer crossed into Parker's lane, and the trailer's back left tire and fender hit the front right corner of Parker's pickup truck.

A post-accident photo of Parker's pickup truck shows damage only to the front right fender and (viewed from the front) the left part of a cattle-guard; a photo of the tractor-trailer shows damage to the corner of the left back tire's fender. Another photo showed a street-level view of the intersection where the accident occurred.

Parker testified that when the accident occurred, he knew immediately that he had been injured, that he was "jacked up," but Officer Krifka testified that none of the persons involved reported any injury and no one had asked for an ambulance.

The jury could compare Parker's descriptions of the accident he gave to his physicians, his trial testimony, the crash report, and the accident photos to resolve any conflicts regarding the relative severity of the accident. *See Rumzek*, 543 S.W.3d at 337; *In re State Farm*, 483 S.W.3d at 263. Based on the evidence, the jury could have found that the accident was a relatively low-speed, side-swipe collision, which could inform their view of the relative severity of the accident and Parker's self-reported subjective injuries. *See Rumzek*, 543 S.W.3d at 337; *Biggs v. GSC Enters., Inc.*, 8 S.W.3d 765, 769 (Tex. App.—Fort Worth 1999, no pet.).

### b.     Evidence of Ongoing Pain from a Pre-Existing Condition

Parker testified that he had suffered from psoriatic arthritis for about fifteen years before the accident, and it caused him intense pain in his joints. To alleviate the pain, he took over the counter medications such as Advil and Aleve, and he took prescription medications including Zorvolex and Tramadol.

Parker testified that, before the accident, he was not taking any pain medication, but after the accident, he took painkillers almost every day. But his pharmacy records showed that, before the accident, Parker not only took Zorvolex, an anti-inflammatory drug, he also took Tramadol, a pain medication. On July 22, 2015, Parker filled his last Tramadol prescription for 120 pills. And on December 9, 2015, he refilled his Zorvolex prescription for 90 pills.

### c.     Extent, Cause of Parker's Injuries

Some of the expert witness testimony, including that from Parker's own experts, controverted Parker's claims that his injuries were caused by the accident and were not merely the

continuing pain from his pre-existing conditions. *Cf. Rumzek*, 543 S.W.3d at 333; *In re State Farm*, 483 S.W.3d at 263.

Dr. Gutzman testified about the condition of Parker's spine based in part on MRIs that were taken about three weeks after the accident. The MRIs showed that Parker's disc at L5-S1 had "a lot of water content loss," which could indicate a degenerating disc. The MRIs also showed that Parker had facet hypertrophy and ligamentum flavum hypertrophy in his lower back and Schmorl's nodes in his lower thoracic region. Dr. Gutzman noted that the Schmorl's nodes were in the ribcage area, not the lower back. But he acknowledged that the facet hypertrophy, ligamentum flavum hypertrophy, and Schmorl's nodes were each degenerative conditions affecting Parker's spine, and each existed before the accident.

When he saw Dr. Bruggeman, Parker told him he had been hit by an eighteen-wheeler truck. Parker completed a medical history form on which he indicated that he only suffered from high blood pressure and the only medication he took was Aleve. Parker reported symptoms of joint pain and muscle aches, which were the same complaints he made to Dr. Cuevas when he was diagnosed with psoriatic arthritis. Based on Parker's account of the accident, his examination of Parker, and his review of Parker's medical records, Dr. Bruggeman concluded that Parker's injuries were probably caused by the accident.

But there was no evidence that either Dr. Gutzman or Dr. Bruggeman ever reviewed the accident photographs or the crash report, or that they knew that it was the tractor-trailer's left rear tires and fender that had side-swiped the right front of Parker's truck while both were turning left in an intersection.

Dr. Warren Neely, a neurological surgeon retained by the defense, agreed with Dr. Bruggeman that Parker's symptoms of pain, numbness, and tingling were caused by L5 and L5-S1 herniations and that Parker needed surgery. But Dr. Neely disagreed that they were caused by

trauma. Instead, he testified that the herniations were due to degenerative desiccation, a condition that was present for at least two years before the October 2015 accident.

In resolving the conflicts between Dr. Gutzman's and Dr. Bruggeman's conclusions that Parker's injuries were caused by the accident and Dr. Neely's conclusion that they were not, the jury could have considered whether Dr. Gutzman's and Dr. Bruggeman's conclusions were based on Parker's inaccurate account of his medical history and his materially incomplete description of the accident. *See Rumzek*, 543 S.W.3d at 337; *In re State Farm*, 483 S.W.3d at 263.

### E. Evidence in the Zone of Reasonable Disagreement

Because his pre-existing medical conditions were causing Parker pain before the accident, his burden was to show that his herniated discs, and the physical pain and mental anguish that he reported, were caused by the October 2015 accident. *See Rumzek*, 543 S.W.3d at 337 (quoting *Murdock*, 946 S.W.2d at 840); *Gainsco Cnty. Mut. Ins. Co. v. Martinez*, 27 S.W.3d 97, 103–04 (Tex. App.—San Antonio 2000, pet. granted, judgm't vacated w.r.m.); *see also Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 840 (Tex. 1997); *McKnight*, 689 S.W.2d at 209.

The jury heard evidence about Parker's fifteen-year history of pain from arthritic psoriasis; the pre-accident condition of his spine, including the degenerative changes; descriptions of the accident; and Parker's testimony about how his post-accident pain was different than his pre-accident psoriatic arthritic pain. *See Rumzek*, 543 S.W.3d at 331; *In re State Farm*, 483 S.W.3d at 263.

It also heard Dr. Gutzman's and Dr. Bruggeman's opinions that the herniations were caused by the accident, and Dr. Neely's opinion that the herniations were present before the accident and were due to degenerative desiccation. *See Rumzek*, 543 S.W.3d at 331; *In re State Farm*, 483 S.W.3d at 263; *Martinez*, 27 S.W.3d at 103–04.

Having reviewed all the evidence in a neutral light, we conclude that it "would enable reasonable and fair-minded people to differ in their conclusions." *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *accord Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 223 (Tex. 2019). Accordingly, the evidence was within the zone of reasonable disagreement, and we will not disturb the jury's finding. *See Bombardier Aerospace*, 572 S.W.3d at 223; *City of Keller*, 168 S.W.3d at 822.

Although the jury awarded Parker all his past medical expenses, there was conflicting evidence on the cause of Parker's injury, and we cannot conclude that the jury's award of no damages for his physical pain and mental anguish was against the great weight and preponderance of the evidence. *See Rumzek*, 543 S.W.3d at 333; *In re State Farm*, 483 S.W.3d at 264; *Martinez*, 27 S.W.3d at 103 (recognizing that "conflicting evidence [regarding pre-existing injuries] was for the jury to resolve").

We overrule Parker's first issue.

### APPELLEES' CONDITIONAL CROSS-APPEAL

In their conditional cross-appeal, RAD Trucking and Vasquez argue the trial court's judgment should be affirmed. However, if we sustain Parker's issue and order a new trial, they ask that they "be allowed to enter relevant evidence challenging the reasonableness of Parker's claimed medical expenses."

Because we have overruled Parker's sole issue, we do not reach Appellees' conditional cross-appeal.

### CONCLUSION

Because Parker had pre-existing medical conditions that could have caused or contributed to his symptoms, his burden was to prove that his injuries were caused by the accident, not by his pre-existing medical conditions. He presented evidence to support his claims that his herniated

discs were caused by the accident, but Appellees presented evidence that the herniations were due to degenerative changes and predated the accident.

Having reviewed all the evidence in a neutral light, we conclude the evidence would allow reasonable and fair-minded people to reach different conclusions on whether Parker's injuries were caused by his pre-existing medical conditions or the October 2015 accident. Therefore, the evidence was within the zone of reasonable disagreement, and we will not disturb the jury's verdict.

We overrule Parker's sole issue, and we affirm the trial court's judgment.

Patricia O. Alvarez, Justice