NO. 12-02-00271-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


TROY HORTON AND 

CAROLYN HORTON,
§
 APPEAL FROM THE 348TH

APPELLANTS


V.
§
 JUDICIAL DISTRICT COURT OF


DENNY'S INC.,

APPELLEE
§
 TARRANT COUNTY, TEXAS






OPINION


 Appellants Troy and Carolyn Horton sued Appellee Denny's Inc. for damages resulting when
Troy Horton slipped and fell on ice in front of Denny's Restaurant in North Richland Hills. The jury
found in favor of the Hortons, but awarded only $1,000.00 in past damages. In two issues, the
Hortons challenge the jury's damage finding and the trial court's failure to grant a new trial. We
reverse and remand.




Background


 On December 23, 1998, Troy Horton ("Horton") slipped on a patch of ice on the sidewalk
while walking with his wife Carolyn from their car to Denny's front door. In obvious pain and
unable to walk, Horton was taken to Columbia North Hills Hospital where x-rays revealed "at least
a trimalleolar ankle fracture." A stirrup splint was applied and he was instructed to keep his weight
off of the ankle, to keep that leg elevated, and to see a doctor.

 On December 28, 1998, Horton first saw Dr. Don Johnston, a board-certified orthopedic
surgeon who would treat him over the next six months. At Horton's first visit, Dr. Johnston found
a "slightly displaced fracture of the distal tibia and fibula." Dr. Johnston attempted to treat the injury
conservatively with a closed reduction and a short leg cast. When Horton returned a week later, new
x-rays showed greater displacement between the fracture fragments. Dr. Johnston decided an open 
reduction of the break was necessary and scheduled Horton for surgery. However, on the evening
before the scheduled surgery, Horton complained of chest pains and the surgery was postponed. His
doctors treated Horton with anticoagulants fearing he suffered from a pulmonary embolism
secondary to the recent immobilization caused by the fracture. Both Dr. Johnston and Horton
thought that, under the circumstances, surgery was too dangerous, and Dr. Johnston proceeded with
conservative treatment including physical therapy. Horton went to thirteen physical therapy sessions
between March 5, 1999 and April 2, 1999 when he quit going to therapy. Dr. Johnston last saw
Horton on July 20, 1999, when he noted "again, no further evidence of healing. He is still walking
with a cane." At that time, he recommended an open reduction with a bone graft, although he
acknowledged that surgery for Horton would involve enhanced risk because of his blood clot
problems. Dr. Johnston never saw Horton again during the nearly three years before trial. 

 Troy Horton sought to recover past and future damages resulting from his fall, and Carolyn
Horton sought to recover for loss of consortium. The jury apportioned the liability equally between
Troy Horton and Denny's and although the Hortons introduced evidence of $16,587.90 in medical
expenses, the jury awarded Troy Horton only $1,000.00 for past damages, including physical pain
and mental anguish, disfigurement, physical impairment, medical care, and loss of earning capacity. 
The jury also found that Troy Horton was entitled to nothing for future damages, and that Carolyn
Horton should recover nothing on her claim of loss of consortium.


Damage Award


 In the Hortons' first issue, they complain that the jury's finding of only $1,000.00 for all past
damages is against the great weight and preponderance of the evidence. The jury award of $1,000.00
in total damages included damages for past medical expenses, past loss of earning capacity, and past
physical pain, mental anguish, impairment, and disfigurement.

 The Hortons argue that when the jury finds a causal connection between the defendant's
negligence and an objectively demonstrable injury to the plaintiff, the jury must award a reasonable
amount for every element of damage resulting from the injury. See Hammett v. Zimmerman, 804
S.W.2d 663, 665 (Tex. App.-Fort Worth 1991, no writ). The Hortons also point out that the fracture
of Horton's ankle was proven by objective and incontrovertible evidence, an injury the jury
attributed to Denny's negligence. The medical expenses for the ambulance trip to the emergency
room and for emergency room treatment on the day of the injury totaled $1,180.75, an amount
greater than that awarded by the jury for all damages. (1)
 Dr. Johnston's bill was $1,035.00 for
treatment between December 28, 1998 and July 20, 1999. Thirteen sessions with the therapist in
March of 1999 cost $2,446.50. They argue that at least $4,717.25 in medical bills were related
exclusively to the ankle fracture, all shown to be reasonable and necessary through Dr. Johnston's
testimony and medical billing affidavits. At trial, Denny's vigorously questioned the relationship
between Horton's pulmonary embolism and his ankle injury. But even disregarding the balance of
the more than $16,587.90 in medical expenses claimed by the Hortons, the medical expenses related
directly to the ankle break were nearly five times greater than the jury's finding for all elements of
damage. In the Hortons' view, this incontrovertibly demonstrates the inadequacy of the jury's
damage finding.

 Denny's Inc. argues that juries have broad discretion in determining the amount of medical
damages. "The jury," they argue, "had the ultimate right to award only the sum of money they
believed accurately reflected the damages sustained by the plaintiffs." Denny's contends the jury
had every reason to distrust the Hortons' proof, especially that related to medical expenses. The jury
saw Dr. Johnston admit that he had testified that the $16,587.90 in medical expenses claimed by the
Hortons were all reasonable and necessary although he had read only the cover sheet and was
therefore totally unfamiliar with the records. On cross-examination it was discovered that the
records were riddled with charges clearly unrelated to the treatment of a broken ankle. One of the
doctor's records contained numerous references to matters having not even an indirect connection
with the accident at Denny's, including "stress test," "varicose veins," "diabetes," "acute sinusitis,"
"vertigo," and "prostate gland test." Denny's points out that medical records affidavits filed under
Tex. Civ. Prac. & Rem. Code Ann. § 18.001 are sufficient evidence to support a finding of fact,
but they are not binding on the jury and do not establish the amount of damages as a matter of law.
See Beauchamp v. Hambrick, 901 S.W.2d 747, 749 (Tex. App.-Eastland 1995, no writ). In
Denny's view, the relationship of the majority of Horton's medical expenses to his ankle injury had
been so discredited that it was well within the jury's province to ignore them all.

Standard of Review

 The Hortons challenge a jury finding upon which they have the burden of proof, and they
must therefore show that the adverse finding is against the great weight and preponderance of the
evidence. See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). 


 In reviewing a challenge that the jury finding is against the great weight and preponderance of the
evidence, the court of appeals must first examine the record to determine if there is some evidence to
support the finding; if such is the case, then the court of appeals must determine, in light of the entire
record, whether the finding is so contrary to the overwhelming weight and preponderance of the
evidence as to be clearly wrong and manifestly unjust, or whether the great preponderance of the
evidence supports its nonexistence. Whether the great weight challenge is to a finding or a nonfinding,
a court of appeals may reverse and remand a case for a new trial only when it concludes that the
finding or nonfinding is against the great weight and preponderance of the evidence.



W. Wendell Hall, Standards of Review in Texas, 34 St. Mary's L.J. 1, 173 (2002). A court of
appeals may not reverse because it concludes that "the evidence preponderates toward an affirmative
answer" but only when the great weight of evidence supports an affirmative answer. Herbert v.
Herbert, 754 S.W.2d 141, 144 (Tex. 1988).

 The jury is the sole judge of the credibility of the witnesses and the weight to be given their
testimony. Trinity Indus., Inc. v. Ashland, Inc., 53 S.W.3d 852, 862 (Tex. App.-Austin 2001, pet.
denied). The general rule is that it is entitled to accept or reject any or all testimony. Id. But a jury
may not ignore undisputed facts and arbitrarily fix an amount of damages which is neither fair nor
just. See Lowery v. Berry, 153 Tex. 411, 269 S.W.2d 795, 796-97 (1954); Vanderlinden v. USAA,
885 S.W.2d 239, 242 (Tex. App.-Texarkana 1994, writ denied). Uncontradicted testimony of expert
witnesses must be taken as true insofar as it establishes facts; however, opinions deduced from those
facts are not binding on the jury. See Gregory v. Texas Employers Ins. Ass'n, 530 S.W.2d 105, 107
(Tex. 1975).

Applicable Law

 It is ordinarily the prerogative of the jury to set damages. Thomas v. Oil & Gas Bldg., Inc.,
582 S.W.2d 873, 881 (Tex. Civ. App.-Corpus Christi 1979, writ ref'd n.r.e.). But where the
evidence of injury and damages is more objective than subjective and the fact of injury is
acknowledged by the jury by a finding of some damages attributable to the defendant, the jury's
failure to award recovery for other elements of damage has been regarded as against the great weight
and preponderance of the evidence. See, e.g., Blizzard v. Nationwide Mut. Fire Ins. Co., 756
S.W.2d 801, 804-05 (Tex. App.-Dallas 1988, no writ); Hammett, 804 S.W.2d at 664-66. This is
not the case, however, "when the indicia of injury and damages are more subjective than objective." 
Blizzard, 756 S.W.2d at 805. When the fact of injury and resulting damages chiefly depend upon
subjective evidence, appellate courts are reluctant to hold the non-findings as against the great weight
and preponderance of the evidence. Id.

 Although most of the cases illustrating the principle involve a failure to find damages for pain
and suffering despite a finding of injury, the same principle has been applied by appellate courts to
overturn inadequate verdicts for medical expenses. In Hill v. Clayton, 827 S.W.2d 570 (Tex. App.-
Corpus Christi 1992, no writ), Clayton shot Hill with buckshot. Hill's injury was described in
emergency room records as follows: "there were three entrance wounds and two exit wounds, shell
and bone fragments in the foot, and broken bones in the foot." Hill later underwent two operations
and a skin graft. The court of appeals held that the jury's award of $2,500.00 was clearly wrong and
manifestly unjust when the proof established $8,939.45 in medical expenses. Id. at 574.

 In Downing v. Uniroyal, Inc., 451 S.W.2d 279 (Tex. Civ. App.-Dallas 1970, no writ), 
Downing incurred about $600.00 in medical expenses, but the jury awarded a total of $12.00 for
medical, hospital, and doctor bills. Downing's injury was evidenced by muscle spasm, an "objective
visible symptom." Id. at 283. The Dallas court found the damages inadequate and reversed and
remanded the cause for a new trial. Id. at 284.

 In Pate v. Tellepsen Const. Co., 596 S.W.2d 548 (Tex. Civ. App.-Houston [1st Dist.] 1980,
writ ref'd n.r.e.), a fluorescent light fell from the ceiling onto Pate where he was working at his desk. 
After three years of neck pain, he underwent a laminectomy which also revealed a severe pre-existing arthritic condition. Both doctors who testified said the pre-existing arthritis was aggravated
by the injury. The jury found $10,000.00 damages for past pain and mental anguish, but found no
damages for past medical expenses. The court of appeals held the jury was not at liberty to ignore
$1,239.00 in charges for surgery and postoperative care attributable to the accident. Id. at 551.

 In each of these cases, the plaintiff's injury was shown by objective symptoms such as
fracture, laceration or muscle spasm. See McGuffin v. Terrell, 732 S.W.2d 425, 427 (Tex.
App.-Fort Worth 1987, no writ). 

 The cases cited by Denny's illustrate the same objective-subjective dichotomy. In
McGuffin, the jury answered all liability issues for McGuffin but, except for $50.00 for past medical
expenses, awarded her no damages for her injuries. There was proof that she incurred $2,000.00 in
reasonable medical expenses. None of the several examinations she was given by three doctors
revealed any objective evidence of injury, and the court of appeals held that the verdict was not
against the great weight and preponderance of the evidence. Id. at 429. In Biggs v. GSC Enter.,
Inc., 8 S.W.3d 765 (Tex. App.-Fort Worth 1999, no pet.), the jury awarded Biggs $30,000.00 for
past medical expenses and lost earning capacity, but nothing for physical pain and mental anguish
or physical impairment. There was evidence that Biggs' low back pain was primarily related to a
previous on the job injury. Although Biggs finally underwent low back surgery for a herniated
lumbar disc, the only medical expert to testify could not say whether the herniated disc predated the
accident or occurred afterwards. A CT scan performed three weeks after the accident did not show
a herniated disc. The court observed that evidence of Biggs' back pain was based almost solely on
his own personal reports of pain, and declined to overturn the jury's findings. Id. at 769. 

 In Crow v. Burnett, 951 S.W.2d 894 (Tex. App.-Waco 1997, pet. denied), although the jury
found that Burnett caused the collision, they awarded Crow no damages. Crow had medical bills
in excess of $40,000.00. The court noted that most of the evidence that Crow's injuries resulted
from the collision with Burnett was subjective. The doctor who testified conceded that the injuries
he observed could have existed before the collision, and his information on causation was based
solely on what Crow had told him. Therefore, the court concluded that the jury's no-damages
finding was supported by probative evidence.

 In Barrajas v. VIA Metro. Transit Auth., 945 S.W.2d 207 (Tex. App.-San Antonio 1997,
no writ), the jury awarded Barrajas only $2,190.25 for past medical care although there was evidence
he had incurred $6,639.15 in medical expenses. Barrajas was riding a Transit Authority Bus when
it was bumped from the rear by a trolley also owned by VIA. The court noted that "the jury heard
evidence that the impact in question was less than five miles per hour, that Barrajas was the only
passenger injured, and that Barrajas' injuries were either non-existent or barely perceptible." Id. at
209. Barrajas' x-rays indicated each region examined was normal and the emergency room
physician released him to return to work with no limitations within two days of the accident. The
court declined to overturn the jury's verdict, relying, it seems clear, on the paucity of objective
evidence supporting Barrajas' injury claims. Id. The court of appeals affirmed the jury's finding
of no damages for pain and suffering in Hyler v. Boytor, 823 S.W.2d 425, 427 (Tex. App.-Houston
[1st Dist.] 1992, no writ), relying on Justice Hecht's analysis in Blizzard:


 Weighing the many subjective complaints against the one objective injury that might have been caused
by this accident, it is apparent that the indicia of injury are more subjective than objective. Thus, the
jury finding of no damages should not be overturned. See Blizzard, 756 S.W.2d at 805.



Hyler, 823 S.W.2d at 428.

Analysis

 The relevant inquiry in this case is whether the indicia of Horton's injury are more objective
than subjective. Like the plaintiff in Hill whose leg was broken by buckshot, x-rays objectively
showed Horton's ankle fracture. The $1,180.75 in medical expenses he incurred on the day of his
injury for ambulance service, the hospital emergency room, and emergency room doctor totaled more
than the jury awarded for all elements of damage. If the $1,035.00 bill for his treatment by a board-
certified orthopedic surgeon and the charges incurred for physical therapy are included, the medical
expenses directly related to the ankle fracture are four and one-half times greater than the jury's
damage award.

 The Hortons called only one expert witness, Dr. Johnston. Dr. Johnston's credibility was no
doubt severely undermined when it became apparent to the jury that he initially had pronounced all
of Horton's medical expenses as "reasonable and necessary" without ever having looked at them. 
He was also forced to admit that he had no basis for his conclusion that Horton's possible pulmonary
embolism was related to the ankle fracture beyond what Horton told him. Denny's presented no
medical evidence. Although Denny's vigorously questioned the relationship between the embolism
and the ankle fracture, nothing in Denny's cross-examination of Dr. Johnston brought into question
the records and charges of the North Richland Hills Fire Department Ambulance Service, the
Columbia North Hills Hospital emergency room, the emergency room doctor, or even the charges
of Dr. Johnston himself. Even disregarding physical pain and all other elements of damage but
medical expenses, the jury's award was clearly inadequate and against the great weight and
preponderance of the evidence. Appellant's first issue is sustained. 

 Because we have sustained the Hortons' first issue, we need not address their second issue
complaining of the trial court's failure to grant a new trial. Tex. R. App. P. 47.1.

 The judgment is reversed and the cause remanded to the trial court.

 

 BILL BASS 

 Justice



Opinion delivered August 29, 2003.

Panel consisted of Griffith, J., DeVasto, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by
assignment.


















(PUBLISH)



1. Ambulance $349.00

 Hospital Emergency Room $435.85

 Emergency Room Physician $370.00

 Radiology (x-ray left ankle) $ 25.90

 

 Total $1,180.75