**Affirmed in Part; Reversed and Rendered in Part; Remanded and Memorandum Opinion filed June 28, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00664-CV

### VIRIDINIA Z. PAZ, Appellant

### V.

### CARMEN ROSA MOLINA, Appellee

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2010-13301**

## M E M O R A N D U M    O P I N I O N

This negligence suit arises from an automobile accident in which a vehicle driven by appellant Virdinia Z. Paz struck a vehicle driven by appellee Carmen Rosa Molina, causing it to roll over three times. A jury unanimously found that Paz negligently caused the accident and awarded $2,000 for Molina's past physical pain and mental anguish, and $2,000 for past physical impairment—but zero damages for past medical care obtained for injuries she allegedly sustained as a result of the accident. The trial court granted Molina's motion for judgment notwithstanding the verdict and awarded additional damages for Molina's past medical care. We affirm in part, reverse and render in part,

and remand to the trial court.

## BACKGROUND

On September 22, 2008, Paz was exiting a Fiesta grocery store parking lot by making a right turn in her vehicle onto the right lane of a two-lane, one-way feeder road alongside I-10 West. As she turned, the front left corner of her vehicle encroached into the left lane, struck a vehicle being driven in that lane by Molina, and caused Molina's vehicle to roll three times and land on its side in the grass beside the freeway. Molina was pulled from the vehicle by her son, who had been traveling in another car behind her, and two other bystanders. Molina, who had been wearing her seatbelt, declined emergency transport to the hospital but later was taken there by her son. Molina sued Paz, alleging that as a result of this incident, Molina "sustained serious and disabling injuries" to her head, arm, and leg that necessitated medical care and caused physical impairment and pain. Paz asserted a general denial and responded that she could not be held liable for Molina's asserted injuries because they were "caused by pre-existing, intervening or superseding medical conditions and/or disease processes."

At trial, neither party presented medical expert testimony on the question of whether the accident caused the alleged injuries for which Molina sought medical treatment. Molina proffered medical records and uncontroverted affidavits concerning the cost and necessity of services obtained to treat those injuries in the total amount of $9,644.07.

The jury unanimously determined that "the negligence, if any, of Viridinia Paz proximately cause[d] **the occurrence** in question."[1] The jury was then asked:

> What **sum of money**, if paid now in cash, would fairly and reasonably compensate Carmen Rosa Molina **for her injuries**, if any, **that resulted** from the occurrence in question?[2]

---

[1] Emphasis added.

[2] Emphasis added.

In response to this question, the jury unanimously awarded Molina (1) $2,000 for past physical pain and mental anguish, and $2,000 for past physical impairment; and (2) zero damages for past medical care.[3] Paz made an unopposed request that the trial court accept the verdict, which the trial court granted.

Molina subsequently filed a motion for a judgment notwithstanding the verdict. In her motion, she requested that the trial court disregard the jury's award of zero damages for past medical care and sign a judgment awarding "the amount of incurred and recoverable [past] medical expenses." She argued that she was entitled to such relief "as a matter of law" under section 18.001 of the Texas Civil Practice and Remedies Code because the affidavits concerning the cost and necessity of medical services conclusively established the amount of Molina's damages for past medical care as $9,644.07, and "no controverting evidence was introduced" concerning that amount. She further submitted unredacted bills to establish medical care expenses in the "paid" amount of $5,517.25 under Texas Civil Practices and Remedies Code section 41.0105. Molina did not seek a new trial.

After a hearing on the motion, the trial court signed a judgment notwithstanding the verdict awarding $5,517.26 in damages for past medical care. The trial court also awarded damages in conformity with the remainder of the jury's verdict, as well as pre-judgment interest.

Paz appeals, arguing that the trial court erred in granting Molina's motion for a judgment notwithstanding the verdict. Molina declined to file a brief in response on appeal.

## ANALYSIS

### I.      Judgment Notwithstanding the Verdict

"Judgment without or against a jury verdict is proper only when the law does not

---

[3] The jury also awarded zero damages for future medical care, physical pain, mental anguish, and physical impairment.

3

permit reasonable jurors to decide otherwise." *Downing v. Burns*, 348 S.W.3d 415, 421 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). For a party to successfully attack an adverse jury finding on which she had the burden of proof, she must show that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In reviewing a trial court's judgment notwithstanding the verdict on such a "matter of law" challenge, we must first examine the record for evidence supporting the finding, and then examine the entire record to determine if the contrary proposition is conclusively established as a matter of law. *Id.* "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller*, 168 S.W.3d at 815–16. We review de novo the trial court's ruling on a motion for judgment notwithstanding the verdict. *See In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) (questions of law are subject to de novo review); *Hicks v. Hicks*, 348 S.W.3d 281, 284 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (same).

Paz argues in her first issue on appeal that the jury heard evidence upon which it properly could have determined the accident did not cause all the alleged injuries for which Molina sought medical care, and that Molina therefore was not entitled, as a matter of law, to damages for all of her past medical care. *See Dow Chem. Co.*, 46 S.W.3d at 241. Paz further suggests that the evidence does not conclusively establish Molina's entitlement to such damages because (1) the alleged injuries were "highly subjective and unable to be corroborated by medical testing"; (2) Molina's testimony and her medical records contained conflicting reports of pain and injury; and (3) Molina failed to present any evidence linking the reported injuries for which she sought medical care to the accident caused by Paz's negligence.

The trial court set aside the jury's award of zero damages for past medical care because "the evidence presented at trial included uncontroverted exhibits made up of medical and billing record affidavits[,] which included itemization of amounts of medical

4

bills that were actually paid." Molina did submit uncontroverted affidavits concerning cost and necessity of services pursuant to Texas Civil Practice and Remedies Code Chapter 18.[4] However, as Paz points out in her third issue, these affidavits, when uncontested, are merely sufficient to support a finding that the amount charged was reasonable and that the services were necessary. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001. The affidavits do not purport to establish a causal nexus between the accident and the medical care expenses, and nothing in Chapter 18 concerns proof of causation in this form. *See Christus Health v. Dorriety*, 345 S.W.3d 104, 108 (Tex. App.— Houston [14th Dist.] 2011, pet. denied). Thus, evidence that Molina's medical care expenses were reasonable and necessary is insufficient to establish causation as a matter of law for all her medical care expenses.

Molina has never argued that the evidence at trial conclusively establishes the elements of injury and causation as they relate to damages for past medical care, and we agree with Paz that it does not.[5] Before trial, the parties discussed this issue in the context of their respective motions in limine with the trial court:

> [COUNSEL FOR PAZ]: All right. Your Honor, this is a car accident case. I pled a general denial. I also pled for a preexisting condition on behalf of the plaintiff. This motion in limine, the way that I read it, seeks to exclude me even arguing the causation of whether the accident caused an injury and whether or not there is any preexisting condition that may be the cause of any current complaint.
>
> *            *            *
>
> THE COURT: So you want to argue that the accident didn't cause the injury that she is complaining about?

---

[4] Section 18.001(b) of the Civil Practice and Remedies Code provides, in relevant part:

> Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

TEX. CIV. PRAC. & REM. CODE ANN. § 18.001 (West 2008).

[5] Although the trial court suggested at the hearing that Paz somehow had relieved Molina of her burden to prove causation, Paz denied ever making and the record does not reflect such a concession.

[COUNSEL FOR PAZ]: Well, that's part of the plaintiff's burden of proof. He has to establish causation.

THE COURT: Right.

*          *          *

[COUNSEL FOR MOLINA]: My only intention, Your Honor, is that we have presented all of our evidence by way of affidavit to invoke the time and savings methods of the Civil Practice and Remedies Code. They didn't controvert the affidavits, No. 1. And No. 2, they have designated no expert on causation on medical treatment, etcetera. So I don't know how they can now come into court today and argue [about] medical causation without any experts being designated with no controverted affidavit on file.

*          *          *

THE COURT: I mean causation is an argument. Causation is something that he should be allowed to do. Filing of the affidavit alone by itself does not obviate that. . . . So if your intent by [filing the motion in limine] was to eliminate causation from your case, you lose.

[COUNSEL FOR MOLINA]: I understand.

THE COURT: Got it.

The record reflects that the issue of causation for some or all of the medical care expenses related to Molina's alleged injuries was a contested issue throughout the rest of trial. Molina testified that she was wearing her seatbelt during the accident and that she was able to walk around after she was assisted out of her vehicle. After she declined emergency medical assistance at the scene and was transported by her son to the Memorial Herman Hospital emergency room, she initially complained of pain related to abrasions on her elbow and hand, then later complained of pain in her neck and back. The records also reflect that she was discharged two hours later with "no serious injury" and "no complaints of pain," although Molina testified that she continued to complain of pain in her neck and back the entire time she was at the hospital.

Molina was instructed to follow up with her primary care physician, who noted that Molina reported experiencing "no pain at the time till she awoke AM." Her primary care physician ordered an x-ray of Molina's spine, which shows "C5-C6, C6-C7: Spondylosis, uncinate hypertrophy, and mild invertebral disc height loss." No expert

testimony was presented to explain this medical finding, and Molina testified that the x-ray was the first one she had ever undergone, and that she did not know if it depicted a condition that existed before the accident or not.

Molina next visited an orthopedic specialist, who made the following initial observations based on Molina's complaints:

> [P]atient has pain and discomfort in the cervical spine, left elbow, back and knees. She has difficulty moving her neck. It looks like she has a little torticollis because of the spasm. She has some numbing and heaviness to both upper extremities and headaches. Flexion and extension is painful, so is the rotation. There is an abrasion to the left elbow. There is also an abrasion to the right knee.

The orthopedic specialist ordered an MRI of Molina's spine, which showed "[a]t C3-4, small 2-mm central disc protrusion and at C5-6, 2-mm disc bulging mildly flattens the ventral thecal sac." Again, no expert testimony was presented to explain this medical finding, and Molina testified that she did not know if the MRI results revealed a condition that existed before the accident or not.

The orthopedic specialist recommended that Molina undergo physical therapy, which she commenced more than three weeks after the accident for three times a week. Molina initially reported pain in her neck and upper back at an intensity level of 0 and 3–5 on a scale of 1–10, and she indicated that her pain was at its worst when driving. Two days after her first session, she reported that she was "feeling better" and was suffering from less intense pain. During six of her eleven physical therapy sessions, Molina reported that she was in no pain.

Molina testified that her neck "was real good" before the accident, but afterwards, "I always have pain." She also testified that her pain was not "100 percent better" after physical therapy, but that it was "[a] little bit, but not that much better." In subsequent visits to her primary care physician in the 18 months following the accident, Molina complained of, among other things, anxiety, depression, and unrelated heel and stomach pain, but her records do not reflect that she reported any neck or back pain during those

visits. Molina testified that the pain has become "normal" for her, in that she has finally accepted that she must "live with the pain."

Regarding the amount of damages she was seeking, Molina testified on direct examination:

Q. Now, Ms. Molina, I want to ask you what it is that we're here about today. What are you asking from the jury?

A. It's very difficult for me to be here today. If it wasn't because of the accident, I would not be here.

Q. I understand. But what are you asking the jury to do?

A. Well, all of the proof are [sic] there. All of the proofs [sic] are there. They're the ones that can decide. I cannot decide.

Q. Again, I'm doing a bad job asking the question. What I want to know is: Is there something that you want the jury to do for you related to your case? Do you want the jury to take care of your medical bills?

A. Yes.

Q. Is there anything else that you want the jury to do for you related to your case?

A. Well, to compensate me for everything that I went through.

Q. And what do you believe that's worth?

A. I'm going to stay like this and not any money from the world is going to take away this.

Q. Okay. What value do you believe your case is worth from what you experienced?

A. I haven't even thought about that, so I don't know what to say.

Q. Well, you want them to take care of your medical bills?

A. Yes.

The jury was not required to accept Molina's testimony regarding (1) the extent of any injuries she allegedly sustained in the accident, or (2) whether her alleged pain indicated an injury that necessitated all of the medical care she received. Nor was the jury required to decide, based on Molina's medical records, that the treatment provided was necessary, or that any perceived injury reflected in such records was caused by the accident rather than age or some underlying condition. Based on this record, we cannot

8

say as a matter of law that there was no proper basis on which the jury could award Molina zero damages for past medical care. *See Dow Chem. Co.*, 46 S.W.3d at 241.

We further note that the cases Molina relied upon in support of her motion for judgment notwithstanding the verdict miss the mark. Each of the cases cited holds that where the damages awarded by the jury are so manifestly low as to be against the great weight and preponderance of the evidence, the court may grant a new trial. *See, e.g.*, *Horton v. Denny's, Inc.*, 128 S.W.3d 256, 260-61 (Tex. App.—Tyler 2003, pet. denied). Nothing in these cases authorizes a trial court or an appellate court to disregard the jury's damage award *and select a new one*—particularly where, as here, the medical care expenses are not for treatment related to objective injuries that were conclusively caused by the defendant. As Molina did not request a new trial, none of the authority upon which she relied supports her argument that judgment notwithstanding the verdict would have been proper.

Accordingly, we conclude that trial court erred in granting Molina's motion for judgment notwithstanding the jury's award of zero damages for medical care expenses and substituting an award for all of Molina's claimed medical care damages.[6] *See Dow Chem. Co.*, 46 S.W.3d at 241. We sustain Paz's first and third issues.

## II. Remedy

If we conclude on appeal that a trial court signed a judgment notwithstanding the verdict in error, we must reverse the trial court's judgment and enter one in conformity with the jury's verdict unless the opposing party presents grounds sufficient to "vitiate[] the jury's verdict" or "prevent[] an affirmance of the judgment had one been rendered by the trial court in harmony with the verdict." TEX. R. CIV. P. 324(c) (when trial court renders

---

[6] Molina also urged in the trial court that the jury's verdict was improper because a jury note during deliberations indicated that the jury "wanted to consider" whether Molina's medical care expenses were covered by insurance, and therefore "did not appreciate" the trial court's instruction not to consider whether Molina's medical care was covered by insurance. However, even if Molina could have prevailed on this argument, she would be entitled to no more than a new trial—which she did not seek. *See* TEX. R. CIV. P. 327 (circumstances under which trial court may grant new trial based on alleged juror misconduct).

judgment notwithstanding the verdict, failure of appellee to bring forward by cross-point on appeal additional alternative grounds to "vitiate the verdict shall be deemed a waiver thereof"); TEX. R. APP. P. 38.2(b)(1) (same); *Church's Fried Chicken, Inc. v. Jim Dandy Fast Foods, Inc.*, 608 S.W.2d 242, 245 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) (citing *Miller v. Bock Laundry Mach. Co.*, 568 S.W.2d 648 (Tex. 1977), and *Jackson v. Ewton*, 411 S.W.2d 715 (Tex. 1967)). Because Molina has declined to file a brief on appeal or make a cross-point in support of the trial court's judgment notwithstanding the verdict, we have no such grounds before us.

Therefore, we must reverse the portion of the trial court's judgment awarding $5,517.26 in damages for past medical care and render judgment reinstating the jury's award of zero damages. We vacate the portion of the trial court's judgment awarding pre-judgment interest, and remand to the trial court for a recalculation of pre-judgment interest, in light of the reduction in the total damage award. We affirm the trial court's judgment in all other respects.

/s/        Sharon McCally
                Justice

Panel consists of Justices Frost, McCally, and Mirabal.[7]

---

[7] Senior Justice Margaret Garner Mirabal sitting by assignment.