COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| HAROLD A. RUMZEK, | § | |
| Appellant, | § | No. 08-15-00067-CV |
| | § | Appeal from the |
| v. | § | 352nd District Court |
| BRYAN D. LUCCHESI, | § | of Tarrant County, Texas |
| Appellee. | § | (TC# No. 352-265227-13) |
| | § | |

## **O P I N I O N**

This is an appeal from a final judgment, in which a jury found that Appellee Bryan D. Lucchesi's negligence was the proximate cause of an automobile collision he had with Appellant Harold A. Rumzek. In spite of Appellee's negligence, the jury awarded Appellant zero damages for his past physical pain and mental anguish, his past physical impairment, and his past medical care expenses. Appellant contends that the jury's failure to award him any damages was against the great weight and preponderance of the evidence. Further, he argues the trial court erred by entering the final judgment without including an award of damages, and by failing to modify its final judgment to include an award of damages. We affirm.[1]

---

[1] This appeal was transferred from the Fort Worth Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. We apply the precedent of that court to the extent required by TEX.R.APP.P. 41.3.

## FACTUAL BACKGROUND

The undisputed facts reveal that Appellant was driving his 2009 Cadillac STS southbound in the far-right lane of Precinct Line Road in Hurst, Texas at approximately noon on August 22, 2011. At the same time, Appellee was also traveling southbound in the middle lane of the same road next to Appellant. Both parties recall hearing a siren from an emergency vehicle just as they passed through the intersection of Cannon Drive and Precinct Line Road. Appellee recalled seeing a firetruck traveling westbound on Cannon Drive, and, anticipating that it was turning onto Precinct Line Road, he attempted to turn his car to the right side of the road to avoid it.[2] Unfortunately, Appellee admittedly failed to see Appellant's car as he was changing lanes, and struck the driver's side of Appellant's car, where Appellant was sitting in the driver's seat.

Appellee's car suffered minor damage, in the form of a dent the approximate size of a baseball on the passenger side of his vehicle. Appellant's car suffered dents on the driver's door and the front fender, as well as scrape marks on the side of the car, but his car's air bags did not deploy. The parties called the police, but there is nothing in the record to indicate that either party was cited in the accident. Appellant was able to drive his vehicle home after the accident.

At the time of the accident, Appellant told Appellee and the police that he was not certain whether he was injured. However, Appellant testified that he was in pain that night, and that he even suspected he might have a broken collar bone as early as the same night of the accident. Nevertheless, as he believed the pain would go away, Appellant admittedly did not seek treatment for any injuries until three weeks after the accident. Instead, Appellant went on a previously-

---

[2] Appellee recalled seeing the firetruck pass by after the accident, heading southbound on Precinct Line Road. In a statement given to police shortly after the accident, Appellant recalled that he saw the firetruck traveling westbound on Cannon Drive. However, at trial, Appellant testified that he did not see the firetruck either before or after the accident.

planned 12- to 14-day vacation, in which he drove from his home in Colleyville, Texas, to Michigan and Ohio and back to Colleyville, taking four days to drive each way. When he returned from his trip, Appellant went to the Baylor Clinic on September 14, 2011, where his treating physician took an x-ray to rule out a broken collar bone. His doctor diagnosed him with a cervical spine strain, a left shoulder AC sprain, and "[d]egenerative disk disease from C4-C7" and prescribed a course of physical therapy for him related to the pain in his left shoulder and neck.

Appellant saw at least two different physical therapists at the clinic from September 30, 2011 to May 8, 2012, and was required to go back to his doctor for a renewal of the physical therapy prescription every six weeks. In all, Appellant had 55 physical therapy treatments for his left neck and shoulder pain, and seven office visits before he was discharged on May 8, 2012.

Appellee admitted at the time of the accident, and at trial, that he was at fault in the accident, and prior to trial, his insurance carrier paid for the repairs to Appellant's vehicle. The only issue remaining at trial was whether Appellant was entitled to any damages for the personal injuries he allegedly suffered in the accident.

At trial, Appellant testified that he suffered from "piercing" and "very persistent" neck and shoulder pain following the accident, as well as muscle spasms, which he claimed interfered with his ability to perform his daily tasks and volunteer work. He also became depressed and suffered mental anguish. Appellant's second physical therapist testified to the course of treatment that she provided to him, as well as his medical records and physical therapy notes. Evidence of Appellant's medical expenses through medical records affidavits from the clinic, together with various billing records, indicated that his total expenses were $15,234.64.

3

Following trial, the jury found that Appellee's negligence was the proximate cause of the collision. The jury was then asked the amount of damages to which Appellant was entitled for his alleged past physical pain and mental anguish, future physical pain and mental anguish, past physical impairment, future physical impairment, and past medical care expenses.[3] The jury entered zero in response to each question, and the trial court entered a final judgment in accordance with the jury's verdict. Appellant thereafter filed a motion to modify or correct the jury's verdict, which was denied. Appellant appeals from the jury's verdict.

## DISCUSSION

In three separate issues (Issues Three, Four, and Five in his brief), Appellant contends that the jury's zero damages verdict was against the great weight and preponderance of the evidence, such as to be "manifestly unjust," and that the evidence he presented at trial required the jury to award him damages for his claims for past medical expenses, his past physical pain and mental anguish, and his past physical impairment. In three additional but related arguments (Issues One, Six, and Seven), Appellant argues that the trial court erred by entering its final judgment without including an award of damages and that the trial court erred by failing to correct or modify the final judgment to make an award of damages; Appellant further argues that because of the jury's allegedly improper verdict and the trial court's failure to correct the verdict, the matter should be remanded to the trial court for a new trial on the issue of damages. Because we conclude that the jury had the discretion to enter a zero damages verdict on all of Appellant's claims, we find it appropriate to consider these six issues together. We consider separately Appellant's argument

---

[3] At the close of trial, Appellant withdrew his claim for any future medical expenses, as he was not seeking any future treatment. On appeal, he does not contest the jury's failure to award him damages for future pain and mental anguish, or for future physical impairment.

4

(Issue Two in his brief) that the medical record affidavits he submitted at trial setting forth the amount of his medical expenses required the jury, as a matter of law, to enter a damages award in the amount of those expenses.

## THE JURY'S VERDICT WAS NOT AGAINST THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE

### Standard of Review and Applicable Law

Generally, a jury has great discretion in considering evidence on the issue of damages. *See In re State Farm Mut. Auto. Ins. Co.,* 483 S.W.3d 249, 263 (Tex. App.—Fort Worth 2016, no pet.); *Hammett v. Zimmerman*, 804 S.W.2d 663, 664–65 (Tex. App.—Fort Worth 1991, no writ); *see also McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986) (the trier of fact is afforded considerable discretion in evaluating opinion testimony on the issue of damages). Nevertheless, a court may overturn a jury's finding on damages if the evidence supporting its findings is so weak or the jury's findings are so contrary to the great weight and preponderance of the evidence such as to be clearly wrong and unjust. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex. 2001); *see also Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986) (in reversing a jury's verdict on appeal, appellate court must "detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias").

In reviewing an argument that the jury's failure to make a finding of damages is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, keeping in mind that the jurors are the sole judges of the credibility of witnesses and the weight to be given their testimony, and may choose to believe one witness and disbelieve another.

5

*See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *McGuffin v. Terrell*, 732 S.W.2d 425, 428 (Tex. App.— Fort Worth 1987, no writ) (although an appellate court has the authority to overturn a jury's verdict if it is against the great weight and preponderance of the evidence, the credibility and weight to be given the evidence are within the province of the jury and we cannot substitute our judgment for that of the jury just because we might have reached a different conclusion); *Montgomery Independent School Dist. v. Davis*, 34 S.W.3d 559, 567 (Tex. 2000) (citing *Webb v. Jorns*, 488 S.W.2d 407, 411 (Tex. 1972)) (jurors alone "resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses").

In resolving an issue of this nature, Texas courts, including the Fort Worth Court of Appeals, have uniformly recognized a distinction between cases in which the plaintiff has presented uncontroverted "objective" evidence of an injury caused by a defendant's negligence, and cases in which the plaintiff's injuries are more "subjective" in nature. *See, e.g.*, *In re State Farm Mut. Auto. Ins. Co.,* 483 S.W.3d at 263; *Hammett*, 804 S.W.2d at 665–66; *see also Thompson v. Stolar,* 458 S.W.3d 46, 62 (Tex. App.—El Paso 2014, no pet.); *Lanier v. E. Foundations, Inc.,* 401 S.W.3d 445, 456 (Tex. App.—Dallas 2013, no pet.); *Horton v. Denny's Inc.,* 128 S.W.3d 256, 259–62 (Tex. App.—Tyler 2003, pet. denied); *Hyler v. Boytor,* 823 S.W.2d 425, 427–28 (Tex. App.—Houston [1st Dist.] 1992, no pet.); *Blizzard v. Nationwide Mut. Fire Ins. Co.,* 756 S.W.2d 801, 805 (Tex. App.—Dallas 1988, no writ); *Davis v. Davison,* 905 S.W.2d 789, 792 (Tex. App.— Beaumont 1995, no writ). "If the plaintiff has objective symptoms of injury . . . and there is readily available testimony which the defendant could offer to refute such fact, plaintiff's evidence cannot be disregarded by the jury when the defendant fails to refute it." *See Hammett,* 804 S.W.2d

6

at 666 [internal quotations omitted]; *see also Lopez v. Salazar,* 878 S.W.2d 662, 663 (Tex. App.—Corpus Christi 1994, no writ) (although the jury is the sole judge of the credibility of witnesses and the weight to be given a witness's testimony, the jury may not disregard the objective symptoms or signs of injury and render a verdict of no damages or award less than the undisputed medical expenses caused by the accident); *Russell v. Hankerson,* 771 S.W.2d 650, 652 (Tex. App.—Corpus Christi 1989, writ denied) (jury could not ignore overwhelming evidence of plaintiff's injury to her foot in entering a zero damages award); *see also Lowery v. Berry,* 269 S.W.2d 795, 796–97 (Tex. 1954) (holding that where a party establishes damages as matter of law, a jury is not at liberty to award zero damages). Therefore, "[w]hen there is uncontroverted, objective evidence of an injury and the causation of the injury has been established, appellate courts are more likely to overturn jury findings of no damages for past pain and mental anguish." *In re State Farm Mut. Auto. Ins. Co.,* 483 S.W.3d at 263 (citing *Grant v. Cruz,* 406 S.W.3d 358, 363 (Tex.App.—Dallas 2013, no pet.)); *see also Blizzard,* 756 S.W.2d at 805.

Alternatively, if the plaintiff's complaints are subjective in nature and, therefore, incapable of direct proof, the jury may award zero damages. *See Stolar*, 458 S.W.3d at 62; *see also Monroe v. Grider,* 884 S.W.2d 811, 820 (Tex. App.—Dallas 1994, writ denied) (recognizing that a jury may deny an award of damages when the injuries sustained are subjective in nature, but not where the injuries are objective in nature). As the Fort Worth Court of Appeals has recognized, where the evidence of pain is conflicting, scant, or more subjective than objective, appellate courts are generally more reluctant to determine a jury finding of no damages is contrary to the great weight and preponderance of the evidence. *In re State Farm Mut. Auto. Ins. Co.,* 483 S.W.3d at 264; *McGuffin,* 732 S.W.2d at 427 (plaintiff was properly denied damages for past medical expenses

7

and past pain and suffering where cumulative evidence reflected that no objective symptoms were discovered until a substantial time period after her accident, and no surgical procedure was performed on the plaintiff); *see also Blizzard,* 756 S.W.2d at 805 (jury finding of no damages for pain and suffering is proper when the indicia of injury and damages are more subjective than objective).

The Fort Worth Court of Appeals has provided examples of cases in which courts have held that a plaintiff suffered an "objective" injury, which would mandate an award of damages; these examples include fractures, organic brain syndrome and nerve damage, severe electrical burns, cuts, and "lacerations, tendinitis, and torn muscles requiring surgery." [4] *Hammett*, 804 S.W.2d at 665–66 (citations omitted). In contrast, courts have generally held that soft tissue injuries are more subjective than objective in nature, and that in such cases, a jury has the discretion to enter a zero damages award. *See, e.g., Sanchez v. King,* 932 S.W.2d 177, 180–83 (Tex. App.—El Paso 1996, no writ) (disapproved on other grounds in *Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 369 n.3 (Tex. 2000)); *see also Gutierrez v. Martinez*, No. 01-07-00363-CV, 2008 WL 5392023, at *6 (Tex. App.—Houston [1st Dist.] Dec. 19, 2008, no pet.) (mem. op.) (even when there is uncontroverted evidence of an injury, a jury may properly deny an award of any damages when the injuries sustained are subjective, such as back and neck soft-tissue injuries); *Lamb v. Franklin,* 976 S.W.2d 339, 341-42 (Tex. App.—Amarillo 1998, no pet.) (despite finding that defendant was liable for causing automobile accident, jury's verdict awarding zero damages

---

[4] The Court in *Hammett* did cite one example of a case finding that a plaintiff who had suffered a lumbar spine injury had presented evidence of an "objective" injury. *Hammett*, 804 S.W.2d at 665–66 (citing *Del Carmen Alarcon v. Circe,* 704 S.W.2d 520, 521 (Tex. App.—Corpus Christi 1986, no writ)). However, in that case, the plaintiff also suffered a "reverse curvature of the spine," which was documented on x-ray, together with a concussion. *Del Carmen Alarcon*, 704 S.W.2d at 521.

for plaintiff's pain and suffering was not against the great weight and preponderance of evidence where there was conflicting evidence regarding the nature of plaintiff's injuries); *Crow v. Burnett,* 951 S.W.2d 894, 898-99 (Tex. App.—Waco 1997, pet. denied) (court upheld zero damages award, despite jury's finding that defendant caused an automobile collision, where the most of the evidence of the plaintiff's injuries resulted was subjective in nature); *Davison,* 905 S.W.2d at 793 (noting that soft tissue injury cases fall within the sphere of a subjective injury); *Hyler,* 823 S.W.2d at 427–28 (where the only "objective injury" following an automobile accident was a "slight" bulging at C3–4 that appeared in a CAT scan, with no herniation, evidence of slipped disc, nerve encroachment, canal stenosis, or fracture, the court concluded that the indicia of injury was more subjective than objective, and affirmed the jury's zero damages award).

## Appellant Failed to Establish the Existence of an Objective Injury

The undisputed evidence in the present case revealed that Appellant was diagnosed solely with soft tissue injuries. His doctor ruled out any fractures on x-ray, and noted that his examination of Appellant's left shoulder showed no atrophy, ecchymosis or swelling, that his neck range of motion was within normal limits, and that Appellant had only "mild pain" during the testing. Further, x-rays of Appellant's left shoulder were deemed to be "normal" except for the existence of "degenerative changes in the AC joint." And finally, an x-ray of Appellant's cervical spine showed only a "decrease in the disk space from C4-C7 with mild spurring." Ultimately, his doctor diagnosed him with a cervical spine strain, a left AC (shoulder) sprain, and "[d]egenerative

9

disk disease from C4-C7."[5]   In addition, the two physical therapists who treated Appellant both assessed him as having a "sprain of neck, cervicalgia and joint pain [in his left] shoulder."[6]

Appellant contends that he presented evidence of an "objective" injury, referring to the findings made by his second physical therapist, Jennifer Moreland, who conducted what she termed an "Objective Examination" of Appellant in which she physically examined the joints of his neck and back by palpitating his spine to see how the soft tissue and the joint felt, in order to test whether the joint was moving or not.   Appellant finds it significant that Moreland found that he had no mobility in the clavicle or collar bone on the left side, and minimal mobility in the scapula.   He also finds it significant that Moreland testified that she found that his left scapula, or shoulder blade, was sitting higher than the right scapula, and was "sitting outside its normal resting position."

Although Moreland categorized her testing as being "objective" in nature, this does not change the ultimate diagnosis in Appellant's case as being a soft tissue injury, i.e., a muscle sprain and general pain in the area of his left shoulder and neck.[7]   *See, e.g., Gutierrez,* 2008 WL 5392023, at *6 (classifying back and neck soft-tissue injuries as being subjective in nature); *Dollison v. Hayes*, 79 S.W.3d 246, 251 (Tex. App.—Texarkana 2002, no pet.) (classifying a lumbar sprain

---

[5] An AC sprain, or acromioclavicular sprain, is a shoulder sprain, which refers to the joint between the acromion and collarbone, called the acromioclavicular joint.   http://www.health.harvard.edu/diseases-and-conditions/shoulder-sprain.   Cervical degenerative disc disease develops when one or more of the cushioning discs in the cervical spine starts to break down due to "wear and tear" over the course of a patient's lifetime. https://www.spine-health.com/conditions/degenerative-disc-disease/cervical-degenerative-disc-disease.

[6] Cervicalgia is a term used to describe pain or significant discomfort in a patient's neck, especially at the back and/or sides.   https://www.verywell.com/cervicalgia-definition-296573.

[7] A "soft tissue injury" is an undefined medical phrase sometimes used as a catchall for injuries that are not bone injuries and would not show up on x-ray. *See Sipes v. Gen. Motors Corp.,* 946 S.W.2d 143, 153 (Tex. App.—Texarkana 1997, writ denied).   Soft tissue injuries include injuries to muscles, tendons and ligaments (not bone). http://www.health.vic.gov.au/edfactsheets/downloads/soft-tissue-injury.pdf.

and strain as being subjective in nature); *Lamb*, 976 S.W.2d at 342 (classifying findings of muscle tightness or tenderness in plaintiff's back and neck and a restricted range of motion in her neck as being subjective in nature). Moreover, we find it significant that all of Appellant's x-rays were negative for any physical injury, and instead only indicated that Appellant was suffering from degenerative disc disease; as such, the x-rays did not confirm the abnormalities Moreland found in her examination. Accordingly, we do not consider this to be the type of uncontradicted objective evidence that would require a jury to award damages.

The Fort Worth Court of Appeals explained the importance of presenting uncontradicted objective evidence of an injury, and conversely, the consequences of failing to do so, in its opinion in *Hammett v. Zimmerman*, 804 S.W.2d 663 (Tex. App.—Fort Worth 1991, no writ). In that case, two plaintiffs claimed that they had been injured in the same car accident. *Id.* at 664. One plaintiff was diagnosed with soft tissue injuries, including restricted neck movement, nerve inflammation, and a lower back strain. *Id.* at 667. However, that plaintiff did not simply rely on her doctor's diagnosis of these soft tissues injuries; instead, at trial, her doctor provided uncontradicted testimony establishing that her x-rays and postural survey indicated changes in the patient's "physiological condition." The court found that this evidence was sufficient to constitute "objective" evidence of an injury, and therefore held that the jury's zero damages award was against the great weight and preponderance of the evidence. *Id.* at 668-69. In contrast, however, the court noted that the second plaintiff's evidence consisted solely of her medical records indicating that she had been diagnosed with soft tissue injuries, including a cervical strain syndrome (neck injury) and tightness in her thoracic area, for which she was prescribed a course of physical therapy. *Id*. at 668. The court concluded that such evidence was merely "subjective"

11

in nature, and found it significant that, unlike the first plaintiff, the second plaintiff did not present any "objective" evidence of an injury; the court therefore held that the jury's zero damages award in her case was not against the great weight and preponderance of the evidence. *Id.* at 668-69; *see also Sanchez,* 932 S.W.2d at 181-82 (upholding a zero damages award where plaintiff suffered only soft tissue injuries, such as neck sprain, where x-rays were negative for any objective injury); *Cesar v. Torres,* No. 13-07-00471-CV, 2009 WL 2914395, at *2 (Tex. App.—Corpus Christi Aug. 31, 2009, no pet.) (mem. op.) (noting that jury had the discretion to enter a zero damages award where plaintiff suffered from soft tissue injuries, including a cervical sprain/strain and a lumbar sprain/strain, where x-rays were negative for any objective injuries). Similarly, we cannot conclude that evidence of Appellant's soft tissue injuries, standing alone, can be considered "objective" evidence that rendered the jury's zero damages verdict against the great weight and preponderance of the evidence.

We also note that Appellant's testimony that he had "muscle spasms" in the months following the accident that interfered with his daily life is insufficient "objective" evidence of an injury. We recognize that at least one court has held that the existence of "muscle spasms" can be considered "objective, visible symptoms" of an injury. *See, e.g., Downing v. Uniroyal, Inc.,* 451 S.W.2d 279, 283 (Tex. Civ. App.—Dallas 1970, no writ). However, in that case, the doctor who examined the plaintiff shortly after his automobile injury testified that he "found marked spams of the cervical muscles" of the plaintiff's back, and found the spasms virtually every time he examined the plaintiff. *Id.* at 282-83. In contrast, the Fort Worth Court of Appeals declined to find that the plaintiff's report of muscle spasms was objective evidence that he suffered an injury in an accident, where the spasms were not observed by the plaintiff's treating physician until

12

approximately three weeks after the accident, and after the plaintiff had been seen several times by other doctors, who found no objective symptoms were present. *McGuffin,* 732 S.W.2d at 427.

Similarly, in the present case, Appellant did not initially report that he was suffering from muscle spasms when he was first seen by his treating physician on September 14, 2011, three weeks after the accident, and his doctor failed to indicate that any spasms were present at that time. Further, although Appellant started physical therapy on September 30, 2011, and was treated five times in the interim, his first physical therapist did not mention any reports of muscle spasms until his therapy session on October 19, 2011, almost two months after the accident. In addition, although Appellant reported having spams to his physical therapists from October of 2011 until May of 2012, there is nothing in the record to indicate whether his therapists actually detected the spams, or whether they were simply self-reported by Appellant. And finally, we note that although one of Appellant's treating physicians stated in his notes that he observed a "mild spasm in the left trapezius" when examining Appellant, this observation was made in January 23, 2012, approximately five months after the accident, and appears to be the only time a treating physician observed a spasm of any kind.[8] As such, we conclude as the court did in *McGuffin*, that the spasms reported by Appellant cannot be considered evidence of an "objective" injury stemming from his accident.

And finally, we note that all of the cases on which Appellant relies are cases in which courts have reversed a jury's verdict awarding zero damages as being against the great weight and preponderance of the evidence, based on a finding that the plaintiff presented uncontradicted and

---

[8] Moreover, the first physical therapist who treated Appellant indicated on her notes during a visit on November 22, 2011, that she believed his neck spasms were "partially triggered by chin jutting," which appeared related to his "daily patterns."

verifiable objective evidence of an injury. *See, e.g.*, *Heritage Operating, L.P. v. Rhine Bros., LLC*, No. 02-10-00474-CV, 2012 WL 2344864, at *7 (Tex. App.—Fort Worth June 21, 2012, no pet.) (mem. op.) (where there was uncontroverted objective evidence that the plaintiff lost sales due to the defendant's breach of a non-compete agreement, the jury's award of zero damages in lost profits was factually insufficient to support a finding of zero damages, and was "manifestly unjust"); *Horton,* 128 S.W.3d at 259–62 (reversing jury's damages award as being clearly inadequate and against the great weight and preponderance of the evidence where x-rays objectively showed plaintiff's ankle fracture); *Reddin v. Brookshire Bros., Inc.,* No. 09-95-241 CV, 1996 WL 596011, at *8 (Tex. App.—Beaumont Oct. 17, 1996, no writ) (not designated for publication) (where plaintiff underwent arthroscopic surgery on knee, during which the surgeon found he had suffered a chondral fracture (torn cartilage), the jury's zero damages award for plaintiff's past physical pain was against the great weight and preponderance of the evidence); *Davison*, 905 S.W.2d at 791 (reversing jury's zero damages award where plaintiff presented uncontroverted, objective evidence that she suffered burns due to the defendant's negligence); *Monroe,* 884 S.W.2d at 820 (where plaintiff suffered a broken wrist as the result of an accident, jury's award of zero damages for pain and suffering was against the great weight and preponderance of the evidence). Having concluded that Appellant did not present uncontradicted verifiable objective evidence of an injury, we find those cases to be inapposite, and we instead conclude that the jury was entitled to enter a zero damages award in light of the subject nature of Appellant's injuries.

### The Evidence was Conflicting on the Issue of Causation

Moreover, even if we were to consider Appellant's injuries could be considered "objective" in nature, we find it significant that the evidence presented at trial was conflicting on the question of whether those injuries were actually caused by Appellee's negligence. It is well-established that a plaintiff may recover damages only for those injuries and medical expenses shown to be caused by the event made the basis of suit. *See Texarkana Mem'l Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 839–40 (Tex. 1997) (citing *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 732 (Tex. 1984)); *see also Durant v. Anderson,* No. 02-14-00283-CV, 2016 WL 552034, at *8 (Tex. App.—Fort Worth Feb. 11, 2016) (mem. op.) ("Part and parcel of proof of damages is the 'causal link' requirement: evidence of "a direct causal connection between the damages awarded, the defendant's actions, and the injury suffered,"" as set forth in the Supreme Court's holding in *Murdock*); *see also Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 593 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (a plaintiff may recover only for reasonable and necessary medical expenses specifically shown to result from treatment made necessary by the negligent acts or omissions of the defendant). Thus, even when the defendant's liability has been established, the burden is on the plaintiff to produce evidence from which the jury may reasonably infer that the damages claimed resulted from the defendant's conduct. *Murdock,* 946 S.W.2d at 838 (citing *Haynes & Boone,* 896 S.W.2d at 181; *McKnight v. Hill & Hill Exterminators, Inc.,* 689 S.W.2d 206, 209 (Tex. 1985)); *see also Rusty's Weigh Scales & Serv., Inc. v. N. Texas Scales, Inc.,* 314 S.W.3d 105, 111 (Tex. App.—El Paso 2010, no pet.) (in order to recover any type of damages, a plaintiff must produce evidence from which the jury may reasonably infer that the damages sued for have resulted from the conduct of the defendant); *Cruz ex rel. Cruz v. Paso Del Norte Health Found.,* 44 S.W.3d 622, 630 (Tex. App.—El Paso 2001, pet. denied) (the plaintiff satisfies this

15

causal link requirement when she presents proof that establishes a direct causal connection between the damages awarded, the defendant's actions, and the injury suffered). As part of this burden, when a plaintiff has pre-existing medical conditions that could have caused or contributed to his symptoms, the plaintiff must specifically demonstrate that his medical expenses were "made necessary by the negligent acts or omissions of the defendant, where such a differentiation is possible." *Murdock,* 946 S.W.2d. at 840; *see also Gainsco County Mut. Ins. Co. v. Martinez,* 27 S.W.3d 97, 103–04 (Tex. App.—San Antonio 2000, pet. granted, judgm't vacated w.r.m.) (upholding zero damage finding for pain and suffering despite award for medical expenses, where jury heard evidence that plaintiff was a malingerer with pre-existing back injuries); *Hyler*, 823 S.W.2d at 427 (upholding zero damage finding for pain and suffering despite award for medical expenses; jury heard evidence of alternative causes for plaintiff's lumbar sprain and spinal injury); *Kulms v. Jenkins,* 557 S.W.2d 149, 154 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.) (court eliminated the plaintiff's recovery for past medical expenses because there was no evidence detailing which treatment was necessary for conditions brought on by the plaintiff himself and which expenses were necessarily incurred because of the collision the defendant's negligence caused).

In the present case, the evidence at trial, including Appellant's medical records and his own testimony, indicate that Appellant, who was 73 years old at the time of treatment, was suffering from a multitude of pre-existing health problems. Significantly, as set forth above, Appellant's physician diagnosed him with "[d]egenerative disk disease" in the C4 to C7 areas, and in addition, his x-rays confirmed the existence of degenerative changes in those same areas. Moreover, Appellant himself testified that he had a pre-existing "serious" lower back injury that he incurred

16

in 1987, while serving in the Air Force in 1987, after which he was given a 60 percent disability rating on his retirement 24 years before the accident. Although Appellant testified at trial that his back was asymptomatic at the time of the accident, and had no impact on his symptoms following the accident, during his deposition, Appellant testified that he was still suffering symptoms from his back injury at the time of the accident; further, Appellant stated in his intake form at his first office visit that he had suffered "chronic back pain" for the past 24 years, and also advised his first physical therapist that he had been suffering from "chronic low back pain" for 20-plus years. As well, the first physical therapist who treated Appellant repeatedly indicated in her progress notes that Appellant had "significant low back problems," including pain and "muscle atrophy," which caused him "severe" and constant "guarding" of his back, and which interfered with his healing.

In addition, Appellant reported to his physician that he had previously undergone a "left biceps tendon rupture repair," on an undisclosed date, and further reported that he had suffered a stroke in June of that same year (approximately two months before the accident), which left him with residual tingling in his left hand.[9] Significantly, we note that all of Appellant's symptoms dealt with the left side of his body.

More importantly, we note that Appellant never presented any medical evidence to establish that his symptoms were linked to his accident, or any evidence detailing what treatment was necessary due to the accident and what treatment may have been related to his pre-existing injuries and his degenerative disc disease. At trial, Appellant's only medical witness was

---

[9] The doctor's report indicates that the stroke affected Appellant's right arm. However, Appellant indicated in his intake forms that it was his left side that was affected, and further advised his physical therapists that his left hand was affected by the stroke. As well, his medical records indicated that he had previously suffered a heart attack, hepatitis, hypertension, type II diabetes, and gout.

17

Moreland, the second physical therapist, who treated him beginning in January of 2012, almost five months after the accident. Moreland, however, never testified on the issue of whether Appellant's symptoms were caused by the accident, and instead only testified to the treatment that she provided to Appellant for his symptoms. Instead, the only evidence that Appellant's symptoms were caused by the accident came from Appellant himself, who testified that he did not suffer from any pain or limitations in his left shoulder and neck prior to the accident.

We further note that even Appellant's own testimony was riddled with conflicts. For example, Appellant admitted at trial that he expressed to both Appellee and the police at the time of his accident that he was not certain whether he was injured, and that he thereafter delayed receiving treatment for three weeks, testifying that he felt "functional" during that time, and was able to drive from his home in Texas to Michigan and Ohio, and back shortly after the accident. Further, on one of the initial intake forms he filled out on September 29, 2011, almost four weeks after the accident, Appellant indicated that he had no difficulty "managing his transportation needs" and that had "No Difficulty" performing most of his everyday chores. Despite this, Appellant testified at trial that his injuries affected his ability to drive for several months after the accident, and that he had ongoing problems performing his daily activities.

Appellant also testified at trial that his injuries interfered with other aspects of his everyday life, including the volunteer work that he did, yet Appellant reported to his physical therapists that he had engaged in various volunteer activities while undergoing treatment, including volunteering at the Shriner's Circus two weekends in a row in October of 2011, serving a 17-hour shift as an "election judge" in November of 2011, and participating in a Shriner's "competition flag

18

ceremony" in March of 2012.[10]  In addition, although Appellant testified that he had "piercing" and "very persistent" neck pain and spams after the accident, he testified that he did not take any pain medication for his injuries, explaining that he has a high tolerance for pain, and was able to control his symptoms with a technique known as "autogenics," which he had learned when he previously injured his back.[11]

When, as here, a plaintiff presents no uncontroverted objective evidence of an injury caused by the defendant's negligence, and the jury is instead presented with conflicting evidence on the cause of a plaintiff's injuries, the jury is entitled to find that the defendant is not liable for the plaintiff's injuries and to enter a zero damages award.  *See, e.g.*, *In re State Farm Mut. Auto. Ins. Co.,* 483 S.W.3d at 263; *see also Sanchez,* 932 S.W.2d at 179 (jury had the discretion to enter a zero damages award, where the evidence demonstrated that the plaintiff suffered from degenerative disc disease, which could have caused at least some of the plaintiff's symptoms, including his headaches and pain in his back, neck, and left limb); *Biggs v. GSC Enter., Inc.,* 8 S.W.3d 765, 769 (Tex. App.—Fort Worth 1999, no pet.) (jury had the discretion to enter a zero damages award for physical pain, mental anguish, and physical impairment, where there was evidence that plaintiff's low back pain was primarily related to a previous on-the-job injury, and

---

[10] As Appellee points out, Appellant also presented conflicting testimony on the severity of the accident.  At trial, he testified at one point that when Appellee's car hit him, it felt like a "slap," while at other times, he testified that he felt like a "sledge hammer."  In addition, at trial, he testified that he felt two impacts that caused the car to whip around, while during his deposition, he testified that he felt only one impact.  In addition, Appellant testified at trial that he hit his brakes prior to the accident, and that he saw skid marks on the road; however, in a statement he gave to his insurance company shortly after the accident, as well as in his initial intake form at the clinic, he stated that he did not have time to hit his brakes or to otherwise respond before Appellee's vehicle hit him.

[11] Autogenic training (AT) is a technique that teaches a person's body to respond to his verbal commands, and assist with relaxation and the control of breathing, blood pressure, heartbeat, and body temperature.  The goal of the AT technique is to achieve deep relaxation and reduce stress.  http://www.webmd.com/balance/tc/autogenic-training-topic-overview#1.

19

the only medical expert at trial was unable to testify that the plaintiff's back problems predated the accident or occurred afterwards); *Wagner v. Taylor*, 867 S.W.2d 404, 405 (Tex. App.—Texarkana 1993, no writ) (jury could resolve conflicts in the evidence in favor of the defendant and refuse to award damages where there was conflicting evidence on the question of whether the plaintiff's injuries were caused by the defendant's negligence or by some other fact); *Srite v. Owens-Illinois, Inc.*, 870 S.W.2d 556, 559, 563 (Tex. App.—Houston [1st Dist.] 1993), *rev'd on other grounds, Owens-Illinois, Inc. v. Estate of Burt*, 897 S.W.2d 765 (Tex. 1995) (the jury's zero damages award was not against the great weight and preponderance of the evidence, where there was conflicting evidence regarding whether "any physical maladies that plaintiffs may have had at the time of trial resulted from other sources").

In light of the conflicting testimony presented by Appellant himself, and his failure to present uncontradicted objective evidence that he suffered an injury caused by Appellee's negligence, we conclude that the jury's verdict awarding zero damages for his alleged past physical pain and mental anguish, his past physical impairment, and his medical expenses was not against the great weight and preponderance of the evidence. Having reached this conclusion, we also conclude that the trial court had the discretion to enter its final judgment in accordance with the jury's verdict, and to refuse to modify its final judgment to include an award of damages. We therefore overrule Appellant's Issue One and Issues Three through Seven.

**APPELLANT'S MEDICAL RECORD AFFIDAVITS DID NOT ESTABLISH CAUSATION OR ENTITLEMENT TO DAMAGES FOR HIS MEDICAL EXPENSES**

Appellant also argues that he was entitled to an award of damages for his medical expenses, as a matter of law, because he timely filed uncontroverted "medical record affidavits" prior to trial, together with billing records, indicating that he had medical expenses in the total amount of

$15,234.64. In making this argument, Appellant relies primarily on section 18.001 of the Texas Civil Practices and Remedies Code, which provides, in relevant part, that: "Unless a controverting affidavit is served as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." TEX.CIV.PRAC.& REM.CODE ANN. § 18.001(b) (West 2015). The Code further provides that a party intending to controvert a claim reflected by the affidavit must serve a copy of a "counteraffidavit" on the opposing party no later than 30 days after the day the party receives a copy of the affidavit, and at least 14 days before trial. TEX.CIV.PRAC.& REM.CODE ANN. § 18.001(e)(1) (West 2015). Appellant points out that Appellee did not timely challenge or controvert the affidavits, and that his medical record affidavits were therefore admitted at trial as exhibits for the jury's consideration. Appellant believes that because his medical record affidavits were uncontroverted, section 18.001 required the jury to award him the amount of his medical expenses set forth in the affidavits.

Appellant's argument, however, is based on a misunderstanding of the function of section 18.001. Section 18.001 is an evidentiary statute that accomplishes three things: "(1) it allows for the admissibility, by affidavit, of evidence of the reasonableness and necessity of charges that would otherwise be inadmissible hearsay; (2) it permits the use of otherwise inadmissible hearsay to support findings of fact by the trier of fact; and (3) it provides for exclusion of evidence to the contrary, upon proper objection, in the absence of a properly-filed controverting affidavit." *See Hong v. Bennett,* 209 S.W.3d 795, 800 (Tex. App.—Fort Worth 2006, no pet.) (citing *Castillo v. Am. Garment Finishers Corp.,* 965 S.W.2d 646, 654 (Tex. App.—El Paso 1998, no pet.)). In

21

effect, the statute simply allows a plaintiff to avoid the necessity of presenting expert witness testimony as to the reasonableness of the amount of his medical expenses; however, it does establish that a plaintiff is entitled to an award of those expenses. *Id.* (noting that although an uncontroverted section 18.001(b) affidavit provides "legally sufficient" evidence to sustain an award of medical expenses without the need to present expert witness testimony, it is "not conclusive" on the issue of whether the plaintiff is entitled to such an award).

To the contrary, Texas courts have uniformly recognized that presenting an uncontroverted medical records affidavit in compliance with section 18.001(b) does not substitute for evidence establishing a causal nexus between the defendant's negligence and the plaintiff's medical expenses; therefore, even if a plaintiff files such an affidavit, he still has the burden of establishing that his medical expenses were made necessary by the negligent acts or omission of the defendant in accordance with the Supreme Court's holding in *Murdock*. *See, e.g., Christus Health v. Dorriety*, 345 S.W.3d 104, 108 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *Murdock*, 946 S.W.2d at 839-40); *see also Atwood v. Pietrowicz*, No. 02-10-00010-CV, 2010 WL 4261600, at *4 (Tex. App.—Fort Worth Oct. 28, 2010, no pet.) (mem. op.) (section 18.001 affidavits do not establish that the costs were caused by the defendant's actions or that the plaintiffs are entitled to those costs as a matter of law); *Walker v. Ricks*, 101 S.W.3d 740, 748 (Tex. App.—Corpus Christi 2003, no pet.) ("evidence presented in accordance with the statute does not conclusively establish the amount of damages nor does it establish a causal nexus between the accident and the medical expenses"); *Sloan v. Molandes*, 32 S.W.3d 745, 752 (Tex. App.—Beaumont 2000, no writ) (18.001 affidavits do "not establish that the amount of the damages shown to be reasonable and necessary was caused by the defendant's negligence and therefore

22

does not establish the plaintiff's entitlement to those damages as a matter of law"); *Beauchamp v. Hambrick*, 901 S.W.2d 747, 749 (Tex. App.—Eastland 1995, no writ) (the statute does not provide that the evidence submitted in the medical affidavit is conclusive, nor does it address the issue of causation). Thus, a jury is not bound to award damages merely because a plaintiff has filed a medical records affidavit, and instead, the jury is, as in any other case, "entitled to answer the damages issue as it deems appropriate." *Atwood*, 2010 WL 4261600, at *4 (citing *Gutierrez*, 2008 WL 5392023, at *9.

Accordingly, we conclude that the section 18.001(b) medical record affidavits filed by Appellant did not conclusively establish that he was entitled to an award of damages for his medical expenses. Appellant's Issue Two is overruled.

## CONCLUSION

We affirm.

YVONNE T. RODRIGUEZ, Justice

November 15, 2017

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating

23