**AFFIRMED and Opinion Filed April 30, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-23-00390-CV

### VARAVOOT ANANTASOMBOON, Appellant
### V.
### ASHLEY WAGGONER, Appellee

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-00704-2021**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Smith
Opinion by Justice Smith

Appellant Varavoot Anatasomboon appeals the trial court's judgment in favor of appellee Ashley Waggoner on a negligence claim he brought against her involving a car accident. In one issue, appellant argues the jury's failure to award him damages, after finding appellee to be at fault for the accident, was against the great weight and preponderance of the evidence. We affirm.

## Factual and Procedural Background

Appellant and appellee were involved in an automobile accident on July 22, 2019. Appellant brought a negligence suit against appellee seeking to recover

damages for the alleged neck, back, and shoulder injuries he suffered in the accident. The case proceeded to trial in January 2023. The jury answered, "Yes," to Question No. 1: "Did the negligence, if any, of [appellee] proximately cause the occurrence in question?" In Question No. 3, the jury was asked, "What sum of money, if paid now in cash, would fairly and reasonably compensate [appellant] for his injuries and damages, if any, proximately caused by the collision?" and listed the following categories: (a) reasonable medical care expenses incurred in the past; (b) physical pain and mental anguish sustained in the past; (c) reasonable medical care expenses incurred in the future; and (d) physical pain and mental anguish that will be sustained in the future. The jury answered, "0" to each. Based on the jury's verdict, the trial court entered judgment that appellant take nothing and that appellee recover her costs from appellant.

Appellant filed a combined motion to modify the judgment and motion for new trial arguing that the jury's answer to the damages' question was so against the overwhelming weight of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias because the only evidence presented regarding damages showed that he incurred over $30,000 in medical expenses. He also argued that appellee should not have been awarded costs because he prevailed on the negligence question and the jury made no finding regarding costs. Appellee filed a response, and appellant filed a supplement to his motion. The trial court denied the motion, and this appeal followed.

## Evidence of Damages

In his sole issue on appeal, appellant argues that the trial court erred by failing to set aside the jury verdict where "the great weight of the evidence, and in fact the only evidence before the court, demonstrated an extensive amount of damage." Appellant argues he suffered actual damages from the accident, evidenced by his medical bills, pain and suffering, and lost wages.[1] Appellee responds that the evidence was legally and factually sufficient to support the jury's finding of zero damages.

Appellant does not set out the standard for review in his brief; however, his argument is presented using the language of a factual sufficiency review. Thus, although appellee's response addresses both the legal and factual sufficiency of the evidence to support the jury's finding of zero damages, we limit our review to whether the evidence was factually sufficient.

When a party attacks the factual sufficiency of an adverse finding on an issue on which he had the burden of proof at trial, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We review all the evidence, *id.*, adhering to the "principle that the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Golden*

---

[1] We note that there was no testimony concerning lost wages, and the jury was not instructed to determine an amount of lost wages proximately caused by the accident.

*Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). If we reverse, we "must 'detail the evidence relevant to the issue' and 'state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.'" *Dow Chem. Co.*, 46 S.W.3d at 242 (quoting *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g)).

The evidence at trial showed that appellant was sitting at a red light when appellee rear ended him, which caused a chain reaction with the two cars in front of appellant in line at the light. At the time, appellant was on his way to pick up his three-year-old son from daycare. Appellant gathered everyone's information, and they left the scene. Neither emergency nor towing services were called to respond. Appellant's car was ultimately found to be totaled by his insurance company.

Appellant testified that he felt pain, but all he could think about was picking up his son. He could not describe the pain he felt at the moment of the accident except to explain that his arm felt stiff. "The pain hurt more days later." He thought it would go away, but when it did not, he went to the chiropractor. Appellant testified that he "started feeling like a tingly feeling" in his pinky and ring finger about a week or two after the accident. He explained that he did not think anything of it because he felt that sensation before and thought it was from typing. He had previously received a diagnosis of left tennis elbow. His neck also started to get stiff, it was hard to turn, and his whole arm went numb. The chiropractor ordered an MRI, and appellant saw his family doctor because he "didn't think it had anything

–4–

to do with the accident." Appellant was then referred to a spine surgeon, who explained that he had two bulged discs that were pinching a nerve. He tried physical therapy, but it did not help and was actually hurting him. Ultimately, he received an injection in his neck. After his injection, he felt "great."

Appellant further testified that his neck still bothered him but that he had learned to deal with it. At the time of trial, he was doing some of the physical therapy exercises at home and would readjust when his neck began hurting. He also stopped playing golf and actively working out because it was painful. However, he was still generally active and admitted to skydiving after the accident. He believed that he would need to return to the spine surgeon for another injection, but he was trying to avoid surgery.

Appellant was asked on cross-examination about the degenerative nature of his injuries and diagnoses, such as spondylitic disc protrusion and foraminal stenosis, but appellant testified that he was not aware of that; no one ever told him it was degenerative or explained what those terms meant. He just knew that a nerve was pinched and something was torn on the left side. However, according to the MRI report in evidence there were no findings of any tear. Additionally, medical records conflicted as to whether his condition was caused by the accident. Appellant's chiropractor concluded, "It is my opinion that the aforementioned condition stated in this report was directly caused by the accident patient was involved in on injury date noted above." But, his family doctor noted, "Explained

to patient that I could not write a letter stating that the MVA [motor vehicle accident] is the cause of the injury but will refer to ortho for further evaluation." None of appellant's doctors testified at trial.

Appellant called appellee and the two other drivers involved in the accident to testify. When defense counsel asked one of the other drivers involved if anyone at the accident scene was hurt, he responded, "Everyone seemed perfectly okay." Appellee also testified that everyone said they were okay, and both appellee and another driver involved testified that no one appeared to be injured. According to appellee, appellant did not make any complaints about pain.

Evidence of appellant's medical expenses was preadmitted by way of uncontroverted section 18.001 affidavits. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 18.001 (affidavits concerning reasonable and necessary charged services). In closing arguments, appellant's counsel directed the jury to the preadmitted affidavits and asked for $30,887.64 in past medical expenses and $4,814 for each additional injection the jury believed appellant would need in the future. Appellant's counsel explained that the award for pain and suffering was within the jury's discretion but suggested that the jury award double the amount of medical expenses for appellant's three years of pain and the amount of medical expenses plus the cost of another injection for his future pain.

Appellee's counsel argued in closing that it was appellant's burden to explain the medical records and he failed to do so. Appellee's counsel also emphasized that

appellant had a preexisting condition in his left arm and that he was still active after the accident and had made no follow up appointments with any doctors since the injection.

Appellant relies on *Russell v. Hankerson*, 771 S.W.2d 650 (Tex. App.—Corpus Christi–Edinburg 1989, writ denied), for support of his argument that the zero damages award is against the great weight and preponderance of the evidence. But in *Russell*, the plaintiff testified that "she experienced pain in her foot upon exiting her car immediately after the accident." 771 S.W.2d at 652. Her foot had slipped off the brake pedal at the time of impact and "became 'tangled' under the pedal." *Id.* at 651. Her foot was swollen and tender to the touch. *Id.* at 652. The court explained that plaintiff exhibited "clear 'objective symptoms of injury,'" such as a cut or laceration, and thus, such evidence could not be disregarded by the jury when the defendant failed to refute it. *Id.* at 652 (quoting *Sansom v. Pizza Hut of E. Tex., Inc.*, 617 S.W.2d 288, 294 (Tex. App.—Tyler 1981, no writ)). "Nor may a jury ignore evidence of past medical expenses which were attributable to the accident in question." *Id.* at 653. Because there was no controverting evidence, the jury was not at liberty to disregard the evidence that plaintiff was injured in the collision and award no damages. *Id.*

Other examples of "objective" injuries are fractures, organic brain syndrome and nerve damage, severe electrical burns, and torn muscles. *See, e.g.*, *Rumzek v. Lucchesi*, 543 S.W.3d 327, 333 (Tex. App.—El Paso 2017, pet. denied) (citing

*Hammett v. Zimmerman*, 804 S.W.2d 663, 665–66 (Tex. App.—Fort Worth 1991, no writ)). Whereas, generally, soft tissue injuries are subjective. *Id.* at 333–34. In *Russell*, the court noted, "We recognize that the above rule only applies when the causation of the injury has been satisfactorily established. In [*Russell*], none of the evidence adduced at trial suggested that [plaintiff's] ailment was caused by anything other than the collision in question." 771 S.W.2d at 652 n.1 (internal citation omitted). But where the evidence of pain is conflicting, scant, or more subjective than objective a jury may choose to award zero damages. *Rumzek*, 543 S.W.3d at 333.

Here, appellant's pain and symptoms were more subjective than objective in nature. He did not suffer an immediately objective injury, such as a broken bone, cut, or burn. There was also evidence suggesting that appellant's condition, at least to a certain extent, was preexisting or caused by something other than the accident in question. Although appellant testified that, before the accident happened, he did not have any neck, back, or shoulder injuries, discomfort, or pain and was completely healthy, he also admitted that he had previously felt tingling in his pinky and ring fingers. Throughout appellant's treatment, he "thought it was because of work or something like that and they were explaining to me nerves were pinching and that's what was causing that."

The jury was provided the following relevant instructions regarding damages: (1) "Do not include any amount for any condition that did not result from the

occurrence in question;" and (2) "Do not include any amount for any condition existing before the occurrence in question except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question." Appellant did not offer any medical testimony as to whether his preexisting symptoms were aggravated due to the accident or what percentage of his condition could be attributed specifically to the accident.

Although an uncontroverted section 18.001 affidavit is sufficient to support a finding that the amount charged by a medical provider is reasonable and that the service was necessary, "[t]he affidavit is not evidence of and does not support a finding of the causation element of the cause of action that is the basis for the civil action." TEX. CIV. PRAC. & REM. CODE § 18.001(b). Therefore, here, appellant's medical records submitted by uncontroverted section 18.001 affidavits did not establish that appellant's condition, for which he received medical treatment, was caused by the accident. Appellant did not present medical testimony regarding causation,[2] and the jury was faced with controverting evidence about whether some of his symptoms, and thus his condition, preexisted the accident.

---

[2] To be clear, expert medical testimony is not always needed to establish causation. *See Ten Hagen Excavating, Inc. v. Castro-Lopez*, 503 S.W.3d 463, 489 (Tex. App.—Dallas 2016, pet. denied). Lay testimony can support a finding of causation if the conditions are within the common knowledge of laypersons, did not exist before the accident, appeared after and close in time to the accident, and are injuries a layperson knows are caused by accidents. *Id.* (citing *Guevara v. Ferrer*, 247 S.W.3d 662, 667 (Tex. 2007)).

Based on the conflicting evidence of appellant's pain and symptoms, the lack of a clear objective injury at the time of the accident, and the lack of medical evidence to establish that appellant's neck injuries were caused, or aggravated, by the accident, we conclude that the jury's finding of zero damages was not against the great weight and preponderance of the evidence as to be manifestly unjust. *See, e.g.*, *McGee v. Tatum*, No. 05-21-00303-CV, 2022 WL 17248174, at *5–7 (Tex. App.—Dallas Nov. 28, 2022, no pet.) (mem. op.) (explaining that the cause of soft-tissue back and neck injuries such as bulging discs and neuroforaminal stenosis are medical conditions outside the common knowledge and experience of jurors and that plaintiff's testimony and medical records alone were insufficient to show causation); *Rumzek*, 543 S.W.3d at 330–42 (upholding jury's finding of zero damages where plaintiff delayed seeking treatment, was diagnosed only with soft-tissue injuries, had preexisting injuries, and did not present any medical evidence to establish that his symptoms were linked to the accident; section 18.001 affidavits did not establish causal nexus); *Grant v. Cruz*, 406 S.W.3d 358, 364–65 (Tex. App.—Dallas 2013, no pet.) (upholding jury's finding of zero damages for past pain and mental anguish where there was conflicting evidence as to plaintiff's pain and symptoms after the accident and medical records did not establish swelling in her neck was the source of her pain). Appellant's sole issue is overruled.

## Conclusion

We affirm the judgment of the trial court.

/Craig Smith/
CRAIG SMITH
JUSTICE

230390f.p05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

VARAVOOT
ANANTASOMBOON, Appellant

No. 05-23-00390-CV          V.

ASHLEY WAGGONER, Appellee

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-00704-
2021.
Opinion delivered by Justice Smith.
Justices Partida-Kipness and Nowell
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ASHLEY WAGGONER recover her costs of this appeal from appellant VARAVOOT ANANTASOMBOON.

Judgment entered this 30th day of April 2024.